IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, for the use of
BELT CON CONSTRUCTION, INC.,

        Plaintiff,

vs.                                                                                    No. CIV 02-1398 JB/LAM

METRIC CONSTRUCTION CO., INC. and SAFECO
INSURANCE COMPANY OF AMERICA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Metric's Motion to Alter or Amend Judgment,
filed January 10, 2005 (Doc. 108)("Motion to Alter or Amend").  The Court held a hearing on this
motion on November 1, 2005.  The primary issues are whether the Court should, under rule 59 of the
Federal Rules of Civil Procedure, amend its decision to: (i) apportion the delay that Defendant Metric
Construction Co., Inc. ("Metric") alleges Belt Con Construction, Inc. ("Belt Con") caused and enter
judgment for Metric's delay damages, including those liquidated damages that the General Services
Administration ("GSA") assessed; (ii) offset the contract balance for the roof warranties that Belt Con
has refused to provide; and (iii) enter judgment for the pipe identification work that Belt Con did not
perform.  Because the Court determines that Metric is entitled to recover for pipe identification and
that the Court made some scriveners errors, the Court will grant the motion in part.  Because there
is no basis to alter or amend the Findings of Fact and Conclusions of Law regarding the apportionment
of delay and the roof warranties, the Court will deny the motion in part.

## FACTUAL BACKGROUND

Metric entered into a contract with the GSA for the construction of dormitories and physical training ("PT") and security buildings at the Federal Law Enforcement Training Center in Artesia, New Mexico.  See Plaintiff's Trial Exhibit 1, Subcontract at 1, executed January 28, 2000 ("Subcontract").  Belt Con entered into a subcontract with Metric whereby Belt Con agreed to furnish certain labor and materials required for the construction of the dormitories and buildings.  See id. at 1.

Metric completed portions of the project 89 and 119 days after the contractual completion dates.  See Trial Transcript at 126:11-127:15 (Miller)(taken November 4, 2004, a.m.)("November 4 a.m. Transcript");[1] Metric's Delay Analysis, Plaintiff's Trial Exhibit 3, at 8.  The GSA withheld liquidated damages from Metric in the amount of $320,800.00 for late completion of the project.  See id.

The Metric-Belt Con subcontract does not contain a liquidated damages provision as between Metric and Belt Con.  See Subcontract.  Article 8 of the Metric-Belt Con subcontract allowed for extensions of time for delays that others caused:  "If [Belt Con's] progress is delayed by the [GSA], [Metric], or another subcontractor, [Belt Con] shall be entitled to an extension of time for the performance of the work covered by the Subcontract . . . ."  Id. at 1. Belt Con was to notify Metric of those delays entitling it to an extension of time for performance of its work.  Article 19 of the subcontract states:

> In the event [Belt Con] seeks an adjustment to the contract time . . . for . . . delays to contract performance . . . [Belt Con] will notify [Metric] in writing, via facsimile and

---

[1] The Court's citations to the transcript of the trial refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

certified return receipt letter to [Metric's] office in Thousand Oaks, California, and clearly state the basis for [Belt Con's] alleged adjustment.  This written notice must be given within 48 hours of encountering the condition or incurring costs relating to the alleged adjustment.

Id. at 3.

Article 8 of the subcontract also allows for allocation of delay damages among those responsible for the delay.  The Metric-Belt Con subcontract specifically addresses situations when more than one subcontractor causes the delay.  Article 8 permits Metric to apportion delay and allocate delay damages that Belt Con or other delaying parties caused:

If [Belt Con] delays progress of the work, [Belt Con] shall be liable to [Metric] for a sum of money equal to the actual damages sustained by [Metric].  If delays are caused by more than one subcontractor, [Metric] shall equitably allocate the damages for delay among [Metric] and those subcontractors responsible for the delay and [Metric's] decision as to the allocation shall be final and binding on all subcontractors as long as the decision is made in good faith.

See Subcontract at 1-2.

Metric retained Curtis Quick to perform a detailed delay analysis of the dormitory phase of the project and to allocate the delays among those subcontractors that caused the alleged delay.  Quick works for a construction management firm, performs critical path management ("CPM") scheduling, and provides expert testimony on construction scheduling/delay analysis.  See Trial Transcript at 115:8-116:20 (Quick)(taken November 3, 2004, p.m.)("November 3 p.m. Transcript").  Before this litigation, Metric performed its own delay analysis and concluded that the GSA, whose changes affected R&R Concrete Contractors, Inc.'s concrete work, caused the entire delay.  See Plaintiff's Trial Exhibit 3, Metric's Delay Analysis at 2, 9 ("Metric's Delay Analysis"). Metric retained Quick to perform a CPM delay analysis after Belt Con sued Metric.  See Trial Transcript at 8:21-24 (Miller)(taken November 4 2004, p.m.)("November 4 p.m. Transcript").  Quick concluded that Belt

Con, who performed the masonry work, was responsible for eighty-eight days of delay.  <u>See</u>

November 4 a.m. Transcript at 103:20-104:8 (Quick).

Under Article 4 of the subcontract, Metric agreed to pay the subcontract price "for the strict

performance of his work."  Subcontract at 1. The "work" included Belt Con's obligation to provide

the roof warranties and pipe identification.  <u>See</u> November 3 a.m. Transcript at 65:5-6 (Pehrson);

November 4 a.m. Transcript at 124:4-6 (Miller).  Under Article 5 of the subcontract, Metric may

withhold payment from Belt Con for any default or breach of the subcontract. <u>See</u> Subcontract at 1.

Article 5 provides in relevant part:

> Provided [Belt Con] has performed all of its obligations under the Subcontract, [Metric] shall make payments to [Belt Con] within seven days after payment has been received by [Metric] from [the GSA].
>
> [Metric] may withhold any and all payments from [Belt Con] on account of any one or more of the following reasons:
>
> * * * *
>
> (h) Any default or breach of this Subcontract by [Belt Con].

<u>Id.</u>

## A.    DELAY IN COMPLETION OF DORMITORIES.

A major problem with the project was the lack of good scheduling.  This problem was also a

difficulty for the Court trying to create a benchmark for all the parties.  Moreover, two of the largest

culprits of delay -- the GSA and R&R Concrete Contractors, Inc. ("R&R") -- are not parties to the

case.

1.     **Scheduling for the Project.**

There were a number of difficulties with the project, including the GSA delaying completion of the PT building, delays completing the concrete work, insufficient subcontractor manpower, out-of-sequence work, weather delay, and damage.  See Metric's Delay Analysis.

One of the great hurdles for this project was the lack of good, reliable schedules.  Metric's contract with the GSA required Metric to submit updated schedules.  See November 4 a.m. Transcript at 70:9-71:3 (Quick).  The GSA did not accept any of Metric's nineteen updated schedules.  See id. at 72:5-73:8 (Quick).  Not only was this a problem for the project and the subcontractors, it presented significant difficulties for the Court in determining whether there were delays, how long those delays lasted, and who was responsible for those delays.  The Court concluded that Metric, as the contractor, was responsible for such poor scheduling.  See Findings of Fact and Conclusions of Law ¶ 36, at 9, filed January 10, 2005 (Doc. 108)("Findings and Conclusions").  The parties dispute most basic facts relating to the project.  Consequently, even now it is difficult to determine what the critical path was for this project.  For example, the parties' two trial experts dispute each other's opinions about what the critical path was.

Quick, Metric's expert, and Lyn Farley, Belt Con's expert, agreed that Building 21's first-floor concrete and masonry were on the critical path.  See November 4 a.m. Transcript at 51:22-23 (Quick); Transcript at 15:8-10 (taken November 2, 2004, a.m.-1)(Farley)("November 2 a.m.-1 Transcript").  They also agreed that Building 19's third-floor masonry was on the critical path.  See November 4 a.m. Transcript at 51:25 (Quick); November 2 a.m.-1 Transcript at 15:10-12 (Farley).  They disagreed, however, on which dormitory was critical; Farley concluded that Building 19's first- and second-floor concrete and masonry formed the intermediate critical path whereas Quick concluded that Building

21's second-floor masonry formed the intermediate critical path.  See November 4 a.m. Transcript at 41:1-52:1 (Quick); November 2 a.m.-1 Transcript at 15:8-12 (Farley).

Quick testified that the critical path went through the concrete on the first and second floors, and the masonry on floors one through three of Building 21, and then through Building 19's third-floor masonry.  See November 4 a.m. Transcript at 41:1-52:1 (Quick).  The Court did not find Quick's methodology, evidence, or testimony reliable.  Farley testified that the critical path went from Building 21's first-floor masonry and then through Building 19's concrete and masonry to the end of the project.  See November 2 a.m.-1 Transcript at 15:8-12 (Farley).  Farley reached this conclusion after filtering the original schedule to show only the masonry and concrete work and after determining that the schedule required two concrete crews.  See id. at 9:7-18 (Farley); id. 12:10-13:16 (Farley).  His methodology can be seen by comparing the float bars on Plaintiff's Trial Exhibit 114 at page 50, which shows five weeks of float, to the Baseline Schedule on Plaintiff's Trial Exhibit 114 at page 22, which shows no float for the same activities.  The Court found Farley's methodology more reliable than Quick's and agreed with Farley that the critical path started on Building 21's first floor and then went through Building 19, as Belt Con alleged.

## 2.    Concrete Work.

In addition to poor master scheduling, the project was plagued from the start by delays that the concrete subcontractor, R&R, caused.  See Trial Transcript at 28:3-29:6 (taken November 1, 2004) ("November 1 Transcript")(Beltran). The evidence at trial was that R&R caused the delay to the dormitories.  See id. at 23:25-24:8 (Beltran).  There is no dispute that R&R caused significant delays.  See Trial Transcript at 96:1-99:7 (taken November 3, 2004, a.m.)("November 3 a.m. Transcript")(Pehrson); November 4 p.m. Transcript at 26:8-9 (Miller). Metric did not properly deal

with those delays and did not adjust its schedule to take those delays into account.  <u>See</u> November 1 Transcript at 29:5-31:13 (Beltran).  Accordingly, not only was scheduling a problem for other subcontractors, the revised schedules were of minimal assistance to the Court in determining whether there were other delays, how long the additional delays lasted, and to whom the additional delays were attributable.

It is true that the masonry work delayed the completion of the project.  The Court could not determine if Belt Con contributed to the delays to the masonry work.  The Court could determine, however, that Metric and R&R caused the delay to the masonry work.

### 3.    Metric's Attempts to Deal with Poor Scheduling and Concrete Delays.

A third difficulty was the manner in which Metric planned the project: the critical path alternated from concrete to masonry and then back to concrete on the critical buildings.  <u>See</u> November 1 Transcript at 215:7-216:13 (Beltran).  Metric's plan made completing the project on time difficult for all of the subcontractors when the concrete work went off schedule.  It also made it difficult for the Court to determine with any degree of accuracy whether there were other delays, how long the additional delays lasted, and to which entity the additional delays were attributable.

### 4.    Metric's Changing Position and Theory.

Metric has changed its position and theory.  Metric's shifting position undercut its credibility with the Court.  On February 27, 2002, Metric submitted a claim, which Metric's president certified, for $320,800.00.  <u>See</u> Plaintiff's Trial Exhibit 2.  Metric then submitted a delay analysis to support its certified claim.  <u>See</u> Plaintiff's Trial Exhibit 3.  At that time, Metric asserted that the GSA was entirely at fault for the delay.  <u>See</u>  November 4 2004, p.m. Transcript at 9:7-13:6; <u>see id.</u> 27:17-21 (Miller).  Shifting its position, Metric now considers Belt Con and R&R predominantly responsible for the

delays to the dormitories.  See id. at 42:11-43:7 (Miller).  In the end, the Court found little of what Metric's expert or president said to be reliable, accurate, or credible.  As a result, Metric did not present to the Court much evidence that it could use in making its determinations.

 For the first time, in its Reply to this Motion, Metric argues that the delays were sequential, not concurrent.  See Metric's Reply Brief, filed February 4, 2005 (Doc. 118)("Metric's Reply").  Metric did not raise this issue in its trial briefs or at trial.  See Metric's Trial Brief, filed October 29, 2004 (Doc. 97); Metric's Supplemental Brief, filed November 15, 2004 (Doc. 102); Metric's Findings of Fact and Conclusions of Law, filed November 15, 2004 (Doc. 103).  As Metric must and does admit, however, there were days when both concrete and masonry were being performed at the same time on the same critical floor.  See Metric's Reply at 4.  As such, it would be difficult to characterize those delays as sequential.

### 5.    Apportionment of Delay.

Both experts that testified at the trial apportioned the construction delays between Belt Con and R&R.  See November 2 a.m.-1 Transcript at 24:25-26:21 (Farley); November 4 a.m. Transcript at 51:22-52:5 (Quick).  Although the two experts disagreed as to how many days of delay should be apportioned to Belt Con, neither contended that Belt Con did not cause any delay.  Quick apportioned eighty-eight days of delay to Belt Con.  See November 4 a.m. Transcript at 52:1-2 (Quick).  Farley allocated approximately thirty-three days of delay to Belt Con.  See Plaintiff's Trial Exhibit 114 at 42.  During the course of the trial, Farley revised his delay allocation.  See  November 2 a.m.-1 Transcript at 22:3-25:8 (Farley).  Farley admitted making an error on a completion date that erroneously increased the delay attributed to the concrete work.  See id.  Farley stated he would make the necessary corrections and that doing so would change a few numbers in his report.  See id.

Metric states that its "counsel was not allowed to cross examine Mr. Farley on the changes." Motion to Alter or Amend at 8. Metric mischaracterizes the proceedings. Metric's counsel requested a copy of the corrections to cross-examine Farley on the correct information. See Trial Transcript at 17:18-24 (Meacham)(taken November 2, 2004, a.m.-2)("November 2 a.m.-2 Transcript"). Metric's counsel then concluded his cross-examination of Farley stating: "I have no further questions." Trial Transcript at 59:16 (taken November 2, 2004, p.m.)("November 2 p.m. Transcript")(Meacham). After redirect examination, the Court asked Belt Con's counsel  if he had offered all the exhibits he wished to have admitted. See id. at 74:16-17 (Court). Belt Con's counsel asked if he could answer the Court's question later. See id. at 74:18-21 (Derrick). The Court then asked Metric's counsel if he had any objection to taking that issue up later and he responded: "No, Your Honor." Id. at 74:22-24 (Meacham). The next day Belt Con's counsel offered Farley's PowerPoint presentation with corrections, Plaintiff's Trial Exhibit 114, as evidence. See November 3 a.m. Transcript at 2:13-4:5 (Derrick). Metric's counsel objected on the grounds that Plaintiff's Trial Exhibit 114 is hearsay and was the subject of Farley's testimony. See id. at 3:15 (Meacham). Metric's counsel did not object on the basis that he had no opportunity to cross-examine Farley on the corrections. See id. The Court admitted Farley's PowerPoint presentation, Plaintiff's Trial Exhibit 114, for demonstrative purposes. See id. at 3:18-25 (Court).

**6.      Evidence about the Dormitory Phase of the Project.**

Quick went through a detailed analysis of the delays he believes are attributable to Belt Con and those he believes are attributable to R&R for the dormitory phase of the project. Quick allocated eighty-eight days of dormitory delay to Belt Con and thirty-eight days to R&R. See November 4 a.m. Transcript at 52:1-3 (Quick).

**a.**      **Building 21 First-Floor Masonry.**

The uncontroverted evidence is that Building 21's first-floor masonry was scheduled[2] for completion on June 13, 2000.  See November 2 a.m.-1 Transcript at 16:7-8 (Farley); November 4 a.m. Transcript at 43:3-5 (Quick).  The masonry started on April 19, 2000.  See November 2 p.m. Transcript at 5:3-5 (Farley).  Although the plan called for Metric to deliver a whole floor to Belt Con at a time, Metric only gave Belt Con one half of a floor on which to work when Belt Con began working on Building 21.  See November 1 Transcript at 27:5-10 (Beltran).  Belt Con halted its work on the masonry because of the lack of door frames.  See November 2  p.m. Transcript at 5:8-11 (Farley); November 1 Transcript at 120:19-121:2 (Beltran).  According to the CPM schedule, the door frames were to be installed after the masonry work on the first floor was complete.  See id. at 125:1-5 (Beltran).  The door frames were delivered in early May 2000.  See id. at 125:19-21 (Beltran).  Even though the door frames were delivered early, Belt Con postponed restarting Building 21's first-floor masonry.  See November 2 p.m. Transcript at 5:12-7:19 (Farley).  According to Belt Con, it completed the work on June 15, 2000.  See November 2 a.m.-1 Transcript at 16:7-24 (Farley).  Belt Con admits that its masonry work on this floor was completed two days late.  See id.

Metric contends that Belt Con did not complete this work until June 28, 2000.  See November 4 a.m. Transcript at 43:3-5 (Quick).  Taking into account that the masonry work started early, on April 19, 2000, instead of on the scheduled start date of May 9, 2000, Quick calculates that Belt Con lost thirty-three days on Building 21's first floor.  See id. at 43:3-10 (Quick).

---

[2] Unless otherwise indicated, references to the schedule refer to the original, as-planned, project schedule.  See FL00 Original Schedule, Plaintiff's Trial Exhibit 114 at 22; November 1 Transcript at 236:12-14 (Farley); November 2 a.m.-1 Transcript at 12:10-13 (Farley).

### b.      Building 21 Second-Floor Masonry.

Farley determined that Building 21's second-floor masonry was not on the critical path and concluded that this work did not contribute to the delay in completing the overall project.  See November 2 a.m.-2 Transcript at 15:9-18 (Farley).  Quick testified that Belt Con took seventy-eight days to complete this work, which was scheduled to take thirty-three days.  See November 4 a.m. Transcript at 48:3-17 (Quick).  Taking into account that Belt Con started eight days ahead of schedule, Quick calculated that Belt Con was responsible for losing thirty-seven days.  See id.

### c.      Building 21 Third-Floor Masonry.

Farley determined that Building 21's third-floor masonry was not on the critical path and concluded that this work did not contribute to the delay in completing the overall project.  See November 2 a.m.-2 Transcript at 15:9-18 (Farley).  Belt Con started Building 21's third-floor masonry seventeen days ahead of schedule on December 4, 2000.  See November 4 a.m. Transcript at 51:1-7 (Quick).  Belt Con had full and free access to the floor beginning December 20, 2000.  See id.  Belt Con took sixty-four days to complete this work, which was scheduled to take thirty-five days.  See id. Metric's expert concluded that the net effect of this was a twelve-day delay.  See November 4 a.m. Transcript at 51:1-7 (Quick).

### d.      Building 19 First-Floor Masonry.

Belt Con completed Building 19's first-floor masonry thirteen days early.  See November 2 a.m.-1 Transcript at 17:9-11 (Farley).  Metric's expert agreed that Belt Con completed this work early.  See November 4 a.m. Transcript at 47:4-11 (Quick).  "Metric is not claiming any delays associated with this work."  Motion to Alter or Amend at 11.

**e.       Building 19 Second-Floor Masonry.**

According to the schedule, Belt Con should have completed Building 19's second-floor masonry by November 21, 2000, not accounting for any lost time because of weather or Building 21. See November 2 a.m.-1 Transcript at 20:17-21:10 (Farley).  Farley calculated the November 21, 2000, completion date by extending the concrete completion date up to September 28, 2000, and revising the masonry completion date to incorporate the schedule loss from the concrete delay.  See id.  Farley indicated that there was a time extension for weather delays, but did not quantify the weather delay extension. See id.  Farley determined that Belt Con completed the work eight days late, on November 29, 2000.  See id.

Farley testified that there were concurrent delays between the masonry and concrete on Building 19's second and third floors.  See id. at 25:9-18 (Farley).  When asked whether that meant that the concrete delay and the masonry delay were running at the same time, Farley responded: "No. They're running – They're both delaying the work.  They are not exactly at the same time.  Both of them caused additional delay to the floor construction."  Id.  Farley did not quantify how much of the delay was concurrent and how much was sequential.

Metric argues in its Motion that the sixty-one day period from September 29, 2000 through November 29, 2000 was twenty-six days longer than the five-week span the schedule allowed.  See Motion to Alter or Amend at 11.  Metric allows for three days of weather delays and contends that Belt Con is responsible for twenty-three days of delay.  See id.  Metric's expert, however, while noting that this work finished behind schedule, concluded that it did not delay the project.  See November 4 a.m. Transcript at 50:18-52:5 (Quick).

####        f.        Building 19 Third-Floor Masonry.

Belt Con's expert testified that twenty-five days of the delay on Building 19's third floor were a result of masonry work, but did not explain what caused the delay.  See November 2 a.m.-1 Transcript at 24:12-25:8 (Farley); Plaintiff's Trial Exhibit 114 at 41-42.  Farley testified that there were concurrent delays between the masonry and concrete on Building 19's third floor.  See id. at 25:9-18 (Farley).  In its Motion, Metric argues that Belt Con took thirty-two days longer than the five-week span that the schedule allocated for completion of this work.  See Motion to Alter or Amend at 10.  Metric's expert, however, attributed only twenty-four days of delay to Building 19's third floor masonry.  See November 4 a.m. Transcript at 51:12-52:1 (Quick).

####    B.    ROOF WARRANTIES.

The terms of the subcontract required Belt Con to provide roof warranties to Metric.  See November 4 a.m. Transcript at 124:4-6 (Miller).  When Metric attempted to obtain the roof warranties from Belt Con, Belt Con responded that it was not going to provide the warranties until Metric paid Belt Con all the money to which Belt Con felt it was entitled.  See id. (Miller).  Belt Con had written roof warranties but did not furnish them to Metric.  See November 1 Transcript at 112:3-6 (Beltran); November 3  a.m. Transcript at 14:12-15:3 (Pehrson); November 4 a.m. Transcript at 124:1-3 (Miller).

The GSA requested the roof warranties from Metric several times.  See November 4 a.m. Transcript at 124:16-18 (Miller).  Metric then contacted several roofers to procure a warranty.  See id. at 124:15-126:10 (Miller).  Metric was able to obtain only one quotation for a roof warranty in the amount of $118,000.00.  See id. at 124:15-126:10 (Miller); Defendant's rial Exhibit BK.  The GSA has not released Metric from its warranty obligation.  See November 4 p.m. Transcript at 32:24-33:5

(Miller).  The GSA has not called on Metric to honor the warranty, and Metric has not performed any warranty work.  See id. at 33:8-15 (Miller).

After Belt Con completed the job, the GSA called Belt Con directly several times to repair the roof.  See November 1 Transcript at 112:6-22(Beltran).  Belt Con responded to each call and performed work on the roof even when Belt Con felt that the warranties did not cover the repairs.  See id.

Metric alleges that Belt Con's refusal to provide the roof warranties damaged it, because Metric decided to take a lesser amount in its settlement with the GSA than it probably would have had it had the warranties.  See November 4 p.m. Transcript at 32:5-16 (Miller).  Metric does not know how much less it took in settlement because of the warranty issue.  See id. at 32:17-23 (November 4, 2004, p.m.)(Miller).  Metric's president stated: "[T]here's a good chance had we had the warranties in first of all [the GSA] probably would have offered more and I would have demanded more.  It's pure speculation though."  Id. at 32:20-23(Miller).

C.    PIPE IDENTIFICATION.

Belt Con's subcontract required that Belt Con perform pipe identification.  See November 3 a.m. Transcript at 65:5-6 (Pehrson).  Belt Con refused to do the pipe identification.  See id. at 65:6-7.  Metric hired another subcontractor to identify and mark all of the piping for a cost of $2,900.  See id. at 65:4-10.

PROCEDURAL BACKGROUND

With its counterclaim, Metric is seeking to enforce Article 8 of the subcontract.  Metric seeks damages from Belt Con for payment of the liquidated damages that Metric incurred from the GSA, and for Metric's costs stemming from the delay that Belt Con caused.  See Metric's Answer and

Counterclaim at 6, filed April 29, 2004 (Doc. 57).

Before the trial commenced, Metric filed its trial brief.  See Metric's Trial Brief.  After a four-day bench trial, Belt Con requested leave to submit a trial brief.  The Court granted Belt Con that opportunity and allowed Metric the opportunity to file a supplemental brief that would be due the same day as Belt Con's trial brief.  See Belt Con's Trial Brief, filed November 15, 2004 (Doc. 101); Metric's Supplemental Brief.  Belt Con also filed a supplemental trial brief.  See Belt Con's Supplemental Trial Brief, filed November 18, 2004 (Doc. 104).

The trial lasted four days in Las Cruces, New Mexico.  See November 1-4 Transcripts.  Before making its Findings of Fact and Conclusions of Law, the Court listened to the testimony of the fact witnesses and expert witnesses, reviewed extensive documentary evidence, and considered the Trial Briefs and Proposed Findings of Fact and Conclusions of Law that the parties submitted.  See Request by Use Plaintiff for Findings of Fact and Conclusions of Law, filed November 15, 2004 (Doc. 100); Metric's Supplemental Brief.

## A.   COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW.

The major issue in this case is the delays in building the dormitories.  Metric's case's attempt to shift blame to Belt Con fails for two reasons.  First, under the circumstances of the case, California law, which controls the contract at issue, does not permit it.  Second, Metric has not shown, by a preponderance of the evidence, how much, if any, of the delay should be attributed to Belt Con.

### 1.   Dormitories.

The Court found that both the concrete work and masonry work for the dormitories were on the critical path.  See Findings and Conclusions, ¶¶ 21, 34, at 8, 9.  The Court concluded that Metric was not entitled to recover liquidated damages from Belt Con because Metric and other subcontractors

delayed the project concurrently with Belt Con.  See id. ¶ T, at 19.  The Court also concluded that

Metric did not prove, by a preponderance of the evidence, how much, if any, of the delay should be

attributed to Belt Con.  See id.

Because Metric and Belt Con executed their contract in the State of California, California law

governs the contract.  Accordingly, in making its ruling, the Court relied upon California cases,  and,

particularly, Aetna Casualty & Surety Company v. Board of Trustees, 223 Cal. App. 2d 337, 35 Cal.

Rptr. 765 (Ct. App. 1963), and General Insurance Company of America v. Commerce Hyatt House,

5 Cal. App. 3d 460, 85 Cal. Rptr. 317 (Ct. App. 1970).  The Court stated:

> "Liquidated damages are a penalty not favored in equity and should be enforced only
> after he who seeks to enforce them has shown that he has strictly complied with the
> contractual requisite to such enforcement."  Aetna Cas. & Surety Co. v. Bd. of
> Trustees, 223 Cal. App. 2d 337, 340 (Ct. App. Cal. 1963)(citations omitted). When
> "delays are occasioned by the mutual fault of the parties the court will not attempt to
> apportion them but will refuse to enforce the provision for liquidated damages."  Gen.
> Ins. Co. of America v. Commerce Hyatt House, 85 Cal. Rptr. 317, 325 (Ct. App. Cal.
> 1970)(quoting Gogo v. Los Angeles County Flood Control Dist., 114 P.2d 64, 71 (Ct.
> App. 1941)).

Findings and Conclusions ¶ S, at 19.

### 2.  Roof Warranty.

The Court found that the subcontract required Belt Con to provide Metric with roof

warranties.  See Findings and Conclusions ¶ R, at 18.  The Court also found that Belt Con refused to

provide the warranties and thereby breached the contract.  See id. at 18-19.  The Court concluded that

Metric remains liable to the GSA for any warranty items relating to the roof.  See id. at 19.  The Court

found that Metric's evidence of damages, however, was speculative and conjectural, and concluded

that Metric had not proved that it suffered damage as a result of Belt Con's failure to provide roof

warranties and that Belt Con was not entitled to damages.  See id. at 19.

3.      **Pipe Identification.**

Metric requested that the Court find that Metric performed the pipeline identification, which the subcontract obligated Belt Con to perform, at a cost of $2,900.00. <u>See</u> Metric's Findings of Fact and Conclusions of Law, ¶¶ 14, 4, at 4, 23. The Court made no findings of fact or conclusions of law regarding Belt Con's alleged failure to perform the pipe identification.

B.      **RULE 59 MOTION.**

Metric moves the Court, pursuant to rule 59 of the Federal Rules of Civil Procedure, to amend its decision. Metric first asks the Court to apportion the delay that Belt Con caused and to enter judgment for Metric's delay damages, including the liquidated damages that the GSA assessed Metric. Second, Metric asks the Court to offset the roof warranties that Belt Con did not furnish from the contract balance. Third, Metric asks the Court to offset the pipe identification work that Belt Con did not perform from the contract balance.

**LAW REGARDING RULE 59: AMENDMENT OF JUDGMENTS**

Rule 59, which allows a court to amend its judgment, provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Fed. R. Civ. P. 59(a). Rule 59 was adopted to make clear that the district court possesses the power to correct its own mistakes in the period immediately following the entry of judgment. <u>See</u> <u>White v. N. H. Dep't of Employment Sec.</u>, 455 U.S. 445, 450 (1982). The trial court should grant a motion

to alter or to amend a judgment only to correct manifest errors of law or to present newly discovered evidence.  See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).  By granting a motion to reconsider and correcting its own errors, the trial court thus avoids unnecessary appellate procedures. See Kennedy v. Commonwealth Edison Co., 252 F. Supp. 2d 737, 739 (C.D. Ill. 2003).  Rule 59 motions to alter or amend judgment may be granted if there has been an intervening change in controlling law, new evidence is available, or there is a need to correct clear error or prevent manifest injustice, and only if they are filed no later than ten days after entry of judgment.  See Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); In re Sun Healthcare Group, Inc., 214 F.R.D. 671, 673-74 (D.N.M. 2003)(Vázquez, J.); Fed. R. Civ. P. 59(e).

The law commits the issue whether to grant or to deny a motion to reconsider, or a motion to alter or to amend a judgment, to the district court's discretion.  See  Phelps v. Hamilton, 122 F.3d at 1324.  District courts have broad discretion in making rule 59(e) determinations.  See Comm. for the First Amend. v. Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992).  The court will consider a rule 59 motion when it involves reconsideration of matters properly encompassed in a decision on the merits. See Phelps v. Hamilton, 122 F.3d at 1323-24.  "A motion to reconsider or to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court."  All W. Pet Supply Co. v. Hill's Pet Prod. Div., 847 F. Supp. 858, 860 (D. Kan. 1994). Rule 59 does not provide a means to expand a judgment to encompass new issues that could have been raised before the court entered its judgment.  See Steele v. Young, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993).

## LAW REGARDING RULE 52: FINDINGS BY THE COURT

Rule 52(a) of the Federal Rules of Civil Procedure provides, in part: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  Appellate courts must accept findings of fact that substantial evidence supports and that are not clearly erroneous.  See Stoody Co. v. Royer, 374 F.2d 672, 678 (10th Cir. 1967);  Fed. Sec. Ins. Co. v. Smith, 259 F.2d 294, 295 (10th Cir. 1958).  "Substantial evidence means more than a mere scintilla, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stoody Co. v. Royer, 374 F.2d at 678.

> When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.

Anderson v. Bessemer City, 470 U.S. 564, 575 (1985).

The Miller Act provides security for those who furnish labor and material in the performance of government contracts.  See Fanderlik-Locke Co. v. United States, 285 F.2d 939, 942 (10th Cir. 1960).  Rule 52's requirement that appellate courts must accept findings of fact that substantial evidence supports and that are not clearly erroneous applies to Miller Act cases.  See Fanderlik-Locke Co. v. United States, 285 F.2d at 944; Wunderlich Contracting Co. v. United States, 240 F.2d 201, 203 (10th Cir. 1957); St. Paul-Mercury Indem. Co. v. United States, 238 F.2d 917, 922 (10th Cir. 1957).

-19-

**CALIFORNIA LAW REGARDING APPORTIONMENT OF DELAY DAMAGES**

Government contracts allow and even require the inclusion of liquidated damages provisions. In Nomellini Construction Company v. Department of Water Resources, 19 Cal. App. 3d 240, 96 Cal. Rptr. 682 (Ct. App. 1971), the California Court of Appeals reversed a trial court's decision that relied on the same cases upon which this Court relied in its Findings of Fact and Conclusions of Law. See 19 Cal. App. 3d at 246-47. In Nomellini Construction Company v. Department of Water Resources, the trial court nullified the liquidated damages provision in the contract because the owner was liable for some of the delay.

The California Court of Appeals in Nomellini Construction Company v. Department of Water Resources held that a liquidated damages provision is not against public policy, and that, in public contracts, the state may recover liquidated damages for that portion of the delay that the contractor caused even though the state may have also caused some delay. See 19 Cal. App. 3d at 245. The California Court of Appeals stated: "The fact that the government's action caused some of the delay presents no legal ground for denying it compensation for loss suffered wholly through the fault of the contractor." Id. (quoting Robinson v. United States, 261 U.S. 486, 488 (1923)). Because, however, the California Court of Appeals found nothing in the record to support the trial court's finding that the Department had caused part of the delay, it held that the contractor should not recover amounts that the Department withheld under the liquidated damages provision for unexcused late completion. Id.

The California Court of Appeals did not discuss Aetna Casualty & Surety Company v. Board of Trustees, and distinguished General Insurance Company of America v. Commerce Hyatt House, stating that it involved a contract between private parties. In reversing the trial court's finding, the

<u>Nomellini</u> court stated:

> The controlling law is found in the decision of the United States Supreme Court in
> <u>Robinson v. United States</u>, 261 U.S. 486 [1923]. . . . That case involved a contract
> which provided for both liquidated damages and extensions of time. The work was
> not completed on time. The government acknowledged that 12 of 121 days of delay
> were chargeable to it; the trial court found the government was chargeable with 60
> days delay. The contractor "contended that, since the government had caused some
> of the delay, the provision for liquidated damages became wholly inapplicable and was
> unenforceable; . . ." (P. 487 [L.Ed. 7611].) In holding that apportionment was proper
> the court stated at page 488, [L.Ed. at page 762]: "If the provision for liquidated
> damages is not to govern, it must be either because, as [a] matter of public policy,
> courts will not, under the circumstances, give it effect (even as a defense) or, because
> in spite of the explicit finding, no day's delay can, as [a] matter of law, be chargeable
> to the contractor, where the government has caused some delay. Neither position is
> tenable . . . . The fact that the government's action caused some of the delay presents
> no legal ground for denying it compensation for loss suffered wholly through the fault
> of the contractor. Since the contractor agreed to pay at a specified rate for each day's
> delay not caused by the government, it was clearly the intention that it should pay for
> some days' delay at that rate, even if it were relieved from paying for other days,
> because of the government's action."

<u>Nomellini Constr. Co. v. Dep't of Water Res.</u>, 19 Cal. App. 3d 240 at 245, 96 Cal. Rptr. at 685. The

court in <u>Nomellini Construction Company v. Department of Water Resources</u> distinguished the cases

upon which this Court relied and those instances where the delays should not be apportioned:

> The earlier case of <u>Gogo v. L.A. etc. Flood Control Dist.</u> (1941) 45 Cal. App. 2d 334
> [114 P.2d 65] (hg. den.) and cases which have followed it . . . have either involved
> contracts devoid of extension provisions or contracts between private parties, and
> where it was said: "Liquidated damages are a penalty not favored in equity . . . ."
> (<u>General Insurance Co. v. Commerce Hyatt House</u>, <u>supra</u>, p. 472.) Here, as we have
> seen, provisions for liquidated damages in public contracts are not only favored, they
> are expressly commanded by Government Code section 14346. Moreover, categorical
> statements that where delays are caused on both sides there is no way to "apportion
> damages" are an absurdity. Damages are not being apportioned. Damages are
> liquidated. Quantum of delay in terms of time is all that is being apportioned. That is
> an uncomplicated fact finding process. That is what courts are for.

19 Cal. App. 3d 240 at 246, 96 Cal. Rptr. at 685.

In another California case, <u>Jasper Construction, Inc. v. Foothill Junior College District of Santa</u>

Clara County, 91 Cal. App. 3d 1, 153 Cal Rptr. 767 (Ct. App. 1979), the trial court instructed the jury

that, if the owner were responsible for any of the delay to the project, it could not withhold any

liquidated damages from the contractor.  See id. 91 Cal. App. 3d at 14-15, 153 Cal. Rptr. at 774-75.

The California Court of Appeals held that the trial court had improperly instructed the jury and

reversed, finding that apportionment of the delay between the contractor and the owner should have

been submitted as part of the fact finding process.  See id.

In Jasper Construction, Inc. v. Foothill Junior College District of Santa Clara County, the

California Court of Appeals stated:

> These instructions were based on the rules set forth in Gogo v. L.A. etc. Flood Control
> Dist., supra., 45 Cal. App. 2d 334 and Aetna Cas. etc. Co. v. Bd. of Trustees (1963)
> 223 Cal. App. 2d 337 [35 Cal. Rptr. 765], both of which held that where both parties
> are responsible for delay of the project, the court will not attempt to apportion the
> delay, but the entire liquidated damages clause will be unenforceable.  In each of these
> cases, however, and in United States v. United Engineering & Contracting Co. (1913)
> 234 U.S. 236 . . . , cited by Jasper, the contract did not evince an intent that liquidated
> damages could be assessed even where delay was caused by both parties.  Thus, in
> Robinson v. United States (1922) 261 U.S. 486 . . . , the U.S. Supreme Court held that
> a liquidated damage provision was unaffected by the fact that the government was
> partially at fault for the delay, where the provision clearly stated that the contractor
> should pay "$420 for each and every day's delay not caused by the United States."
>
> In Nomellini Constr. Co. v. State of California ex rel. Dept. of Wat. Resources (1971)
> 19 Cal. App. 3d 240 [96 Cal. Rptr. 682], the court followed the Robinson rule and
> held that the trial court was obligated to apportion the delays between the state and a
> contractor and to enforce a liquidated damage provision . . . .
>
> In the present case, the contract between Jasper and Foothill not only contained
> provisions for extensions of time by the owner, but specifically provided that liquidated
> damages would be assessed for "every calendar day that the Contractor shall not be
> charged with liquidated damages . . . when the delay in completion of the work is due:
> . . . (b) To unforeseeable cause beyond the control and without the fault or negligence
> of the Contractor, including . . . acts of the Owner. . . ."
>
> Jasper's contention that apportionment would unnecessarily complicate the fact finding
> process  is  fully  answered  by  the  following  statement  from  Nomellini:  " . . .

[C]ategorical statements that where delays are caused on both sides there is no way to 'apportion damages' are an absurdity. Damages are not being apportioned. Damages are liquidated. Quantum of delay in terms of time is all that is being apportioned. That is an uncomplicated fact finding process. That is what courts are for." (19 Cal App. 3d at p. 246).

91 Cal. App. 3d at 13-15, 153 Cal. Rptr. at 774-75.

### FEDERAL LAW REGARDING APPORTIONMENT OF DELAY DAMAGES

In Kelso v. Kirk Brothers Mechanical Contractors, 16 F.3d 1173 (Fed. Cir. 1994), the United States Court of Appeals for the Federal Circuit held that, when both parties concurrently contribute to delays, neither party can recover damages for them. See id. at 1177. "When both parties share responsibility for delays, neither merits damages, unless the delays can be apportioned between the parties." Id. The contractor in Kelso v. Kirk Brothers Mechanical Contractors was seeking delay damages from the Navy. Because the Navy did not provide a piece of equipment on time, the Board found that the Navy "caused delay for the entire period of [the contractor's] performance." Id. at 1176-77. The Board also found "that [the contractor] concurrently contributed to the delays." Id. In Kelso v. Kirk Brothers Mechanical Contractors, there was never a period when the Navy was the sole cause of the delay. See id. The Kelso court held that there was no way to apportion the delays between Kelso and the Navy, because the Navy caused delay "during the entire period of [the contractor's] performance." Id.

When delays are sequential, they are apportionable. See Essex Electro Eng'rs v. Danzig, 224 F.3d 1283, 1292 (Fed. Cir. 2000)(distinguishing concurrent delays from sequential delays). In Essex Electro Engineers v. Danzig, the contractor would submit non-compliant submissions to the government. The government would not respond to the submissions in a timely manner. The Federal Circuit in Essex Electro Engineers v. Danzig stated: "The sequential nature of Essex's submissions and

the government's responses renders each party's delays inherently apportionable." Id. at 1292.

## LAW REGARDING DAMAGES

A party whom a breach of contract injures should receive, as nearly as possible, the equivalent of the benefits of performance. See Brandon & Tibbs v. George Kevorkian Accountancy Corp., 2226 Cal. App. 3d 442, 455, 77 Cal. Rptr. 40, 47 (Ct. App. 1990). "The aim is to put the injured party in as good a position as he would have been had performance been rendered as promised. This aim can never be exactly attained yet that is the problem the trial court is required to resolve." Id.

> The rules of law governing the recovery of damages for breach of contract are very flexible. Their application in the infinite number of situations that arise is beyond question variable and uncertain. Even more than in the case of other rules of law, they must be regarded merely as guides to the court, leaving much to the individual feeling of the court created by the special circumstances of the particular case.

Id. (quoting 5 Corbin, Contracts (1964) Damages, § 1002, p. 33).

California law permits a party to recover the amount that will compensate the party for all the detriment proximately caused, or which, in the ordinary course of things, would be likely to result from the opposing party's breach of contract. See Cal. Civ. Code § 3300; Postal Instant Press, Inc. v. Sealy, 43 Cal. App. 4th 1704, 1709, 51 Cal. Rptr. 2d 365, 368 (Ct. App. 1996). California law requires that the fact of damage be proved with reasonable certainty. See Israel v. Campbell, 163 Cal. App. 2d 806, 816, 330 P.2d 83, 88 (Cal. Ct. App. 1958); Allen v. Gardner, 126 Cal. App. 2d 335, 340, 272 P.2d 99, 102 (Cal. Ct. App. 1954). To recover damages projected into the future, a party must show with reasonable certainty that detriment from the breach of contract will accrue to him in the future. See Cal. Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 62, 221 Cal. Rptr. 171, 205 (Ct. App. 1985). "Damages which are remote, contingent, or merely possible cannot serve as a legal basis for recovery." Id.

-24-

"Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty. . . .  The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." GHK v. Mayer Group Inc., 224 Cal. App. 3d 856, 873, 274 Cal. Rptr. 168, 179 (Ct. App. 1990) (emphasis in original).  The selection of which measure of damages to apply is within the sound discretion of the trier of fact.  See id.

## ANALYSIS

Because some time has passed between the trial and this motion, and to be as fair as possible to Metric, the Court reviewed the evidence at trial to see if any of its Findings of Fact and Conclusions of Law should be amended or altered.  The Court has carefully considered Metric's arguments, one of which is new, and has determined that most of the major challenges are not persuasive.  Accordingly, with the exception of the pipe identification issue and some scrivener's errors, the Court will deny Metric's Motion.

## I.   THE COURT DID NOT ERR BY NOT APPORTIONING THE DELAY.

Metric's contention that Belt Con caused delays, and that, therefore, the Court should attribute some delay damages to Belt Con, has two major problems.  First, Metric has not persuaded the Court that the delays on the project were attributable to Belt Con.  Second, California law does not, under these circumstances, permit such an allocation.

### A.   THE EVIDENCE SUPPORTS THE COURT'S FINDINGS OF FACT.

Metric had ample opportunity before trial and at trial to submit its arguments.  It makes the same arguments on the facts in this motion that it made in its Trial Brief and Supplemental Trial Brief, which the Court previously considered and rejected.  Nevertheless, Metric argues that the Court

should: re-examine the evidence and accept the analysis that its expert -- Quick -- presented; reject the

analysis that Belt Con's expert -- Farley-- presented; and apportion most of the delay to Belt Con.

Metric is correct that the Court can, where appropriate and the evidence so supports, apportion

delay. See Motion to Alter or Amend at 8. The Court will not hesitate to undertake that task where

appropriate. Metric has not, however, with its factual presentation or its legal arguments, convinced

the Court that it should do so in this case.

Because the Court found that Metric did not prove, by a preponderance of the evidence, how

much, if any, delay should be attributed to Belt Con, Metric must argue the evidence, as it does at

great length in its motion. Metric's problem is that Belt Con's delays are not apportionable solely to

Belt Con. The evidence supports the Court's findings of fact and are thus not clearly erroneous; the

Court will not alter or amend them.

Metric contends that the minimum number of delays for which Belt Con is responsible,

according to the evidence presented at trial, is fifty-seven days. See id. at 11. Metric's argument on

the facts repeats Quick's testimony that Building 21 controlled the critical path. See id. at 8-10. Farley

disputed Quick's testimony that Building 21 controlled the critical path, however, and concluded that

Building 19 controlled the critical path. See  November 2 a.m.-1 Transcript at 15:8-12 (Farley).

Quick overlooked R&R's concurrent delays and did not apply the logic in the project CPM schedule,

which required that a preceding activity -- the concrete activity -- be completed before commencing

the follow-on masonry activity. See November 4 a.m. Transcript at 94:14-96:22 (Quick). Quick's

testimony contradicts the analysis that Metric submitted to the GSA, which concluded that R&R was

the cause of all the project's delays.

At trial, Metric contended that two subcontractors – Belt Con and R&R – caused the delays.

-26-

Metric did not, however, present sufficient evidence for the Court to make a determination of the delay that Belt Con caused. The Court did not credit Quick's testimony. Sufficient evidence was not presented showing when the concrete work was being performed on each floor, when the masonry work was being performed on each floor, and when the concrete work overlapped with the masonry. Metric submitted no credible evidence that Belt Con alone caused any delay to the dormitories. Contrary to Metric's contention, there is not a significant amount of delay attributable solely to Belt Con.

> 1.    **Building 21 First-Floor Masonry.**

Metric did not present evidence sufficient for the Court to allocate delay for Building 21's first-floor masonry to Belt Con. Metric contends that Belt Con delayed the first floor by either two days or fifteen days depending upon which date is used for the masonry's completion, June 15, 2000, as Belt Con urges, or June 28, 2000, as Metric contends. See November 2 a.m.-1 Transcript at 16:7-24 (Farley); November 4 a.m. Transcript at 43:3-5 (Quick). Metric had delivered only half of Building 21's first floor, rather than the entire floor as called for in the schedule, when Belt Con began working on Building 21's first-floor masonry, rather than delivering the entire floor as called for in the schedule plan. See November 1 Transcript at 27:5-10 (Beltran). Metric did not demonstrate to the Court that its failure to deliver the entire floor did not cause Belt Con to delay completing the masonry work.

> 2.    **Building 21 Second-Floor Masonry.**

Metric contends that Belt Con was the sole cause of the completion of Building 21's second-floor masonry being delayed for at least twenty-five days. Quick, Metric's expert, testified at trial that Belt Con lost thirty-seven days. See November 4 a.m. Transcript at 48:3-17 (Quick). The Court however, did not find Quick's analysis reliable. The Court, on the other hand, did find Belt Con's

expert Farley's analysis reliable.  Farley testified that Building 21's second-floor masonry was not on the critical path and that any delay in completing that work did not delay the project.  <u>See</u> November 2 a.m.-1 Transcript at 15:9-18 (Farley).

### 3.   Building 21 Third-Floor Masonry.

Metric argues that Belt Con was the sole cause of the delay to the completion of Building 21's third-floor masonry.  Metric contends that Belt Con was responsible for eleven or twelve days of delay to this segment of the project, depending whether the Court accepts Farley's or Quick's date for when Belt Con had access to the entire floor.  <u>See</u> November 4 a.m. Transcript at 51:1-7 (Quick).  Farley represented that Building 21's third-floor masonry was not on the critical path and that any delay in completing this work did not delay the project.  <u>See</u> November 2 a.m.-2 Transcript at 15:9-18 (Farley).  The Court accepts Farley's conclusion regarding this work.

### 4.   Building 19 First-Floor Masonry.

The experts for both Metric and Belt Con testified that Belt Con completed Building 19's first-floor masonry early.  <u>See</u> November 2 a.m.-1 Transcript at 17:9-11 (Farley); November 4 a.m. Transcript at 47:4-11 (Quick).  In its motion, Metric admits that it is not seeking any damages for delays associated with this work.  <u>See</u> Motion to Alter or Amend at 11.

### 5.   Building 19 Second-Floor Masonry.

Although Metric argues in its Motion that Belt Con took twenty-six days longer to complete Building 19's second-floor masonry than was scheduled, Metric's expert concluded that this work was not on the critical path and did not delay the project.  <u>See</u> November 4 a.m. Transcript at 50:18-52:5 (Quick).  Belt Con's expert testified that Belt Con completed this work eight days late, but also indicated that there were concurrent delays between the masonry and concrete elements of Building

19's second floor.  See November 2 a.m.-1 Transcript at 25:9-18 (Farley).  No evidence was submitted to the Court demonstrating that Belt Con's performance on this segment of the project caused any sequential delay.

### 6.   Building 19 Third-Floor Masonry.

Metric argues that Belt Con took thirty-two days longer to complete Building 19's third-floor masonry than was allocated for that project segment in the schedule.  See Motion to Alter or Amend at 10.  Metric's expert, however, attributed only twenty-four days of delay on this floor to Belt Con.  See November 4 a.m. Transcript at 51:12-52:1 (Quick).  Belt Con's expert testified that there were concurrent delays between the masonry and concrete on this floor.  See November 2 a.m.-1 Transcript at 25:9-18 (Farley).  The Court was not presented with evidence demonstrating that Belt Con's performance with respect to Building 19's third-floor masonry caused any sequential delay.

### B.   METRIC DID NOT ALLOCATE THE DELAYS IN A GOOD FAITH MANNER.

Metric first contends that the Court and Belt Con must adopt its delay allocations.  Metric argues that Article 8 of the subcontract specifically allows it to recover damages for delays Belt Con caused.  See Motion to Alter or Amend at 8.  Article 8 of the subcontract allows Metric to equitably allocate the damages for delay among those responsible for the delay:

> If [Belt Con] delays progress of the work, [Belt Con] shall be liable to [Metric] for a sum of money equal to the actual damages sustained by [Metric].  If delays are caused by more than one subcontractor, [Metric] shall equitably allocate the damages for delay among [Metric] and those subcontractors responsible for the delay and [Metric's] decision as to the allocation shall be final and binding on all subcontractors as long as the decision is made in good faith.

See Subcontract at 1-2.  Metric further asserts that its decision as to the allocation is to be final and binding on all subcontractors as long as the decision is made in good faith.  See Motion to Alter or

Amend at 12.

Metric contends that both Belt Con and R&R caused delays: some were concurrent -- where they were both working on the floor at the same time -- and some were sequential -- as when Belt Con allegedly did not complete its work on Building 19's third-floor masonry in five weeks after getting the entire floor.  Metric maintains that it has allocated the delays consistent with Quick's analysis, that its allocation was done in good faith, and that Article 8 permits it to recover, in the proportion that it allocates, the damages that it has suffered as a result of the delays .See Motion to Alter or Amend at 12.  Metric contends that Quick's allocation was a reasonable allocation made in good faith and that the Court should hold that allocation to be binding on Belt Con.  See id.

Metric has not persuaded the Court that it equitably allocated the delay in good faith.  In November 2002, Metric provided the GSA with a very detailed delay analysis to support Metric's request for the release of $320,000.00 in liquidated damages.  See Metric's Delay Analysis, Plaintiff's Trial Exhibit 3.  Metric's delay analysis, a twenty-page, single-spaced report with thirty-five pages of exhibits, concluded that the GSA caused all of the delay, both directly by making changes to the project, and indirectly when the GSA's changes and delays caused manpower shortages and resequencing of the concrete and masonry work.  Metric's president, Tom Miller, certified to the GSA that the claim for the $320,000.00 was "made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief."  Plaintiff's Trial Exhibit 2.  At trial, Miller testified he would not certify that claim because he "[has] more information now."  November 4 p.m. Transcript at 42:11-43:7 (Miller).  Miller did not identify, however, the additional information.  He did admit, though, that he did not request an official delay analysis until this litigation began.  See November 4 p.m. Transcript at 8:21-24 (Miller).  Based upon the foregoing, the Court concludes that

Metric did not equitably allocate delay damages in good faith, but arrived at Quick's analysis for purposes of litigation.

### C.   THE SUBCONTRACT DOES NOT EXPRESSLY ALLOW THE COURT TO ALLOCATE THE DELAY DAMAGES.

The Court has determined that Quick's allocation is not equitable and was not made in good faith.  Metric, anticipating the Court's conclusion that it did not allocate the delay damages in good faith, asks the Court to determine the days of delay allocable to Belt Con.  See Motion to Alter or Amend at 12.  Whether the law gives the Court that power is a secondary issue; the Court must first determine whether the contract gives it that power.  The Court concludes that the subcontract is silent on that issue, and that it must therefore look to the law.  See Nomellini Constr. Co. v. Dep't of Water Res., 19 Cal. App. 3d at 246, 96 Cal. Rptr. at 685 (stating it is the court's responsibility to apportion delay which is an uncomplicated fact finding process).

There is no dispute that Article 8 of the subcontract allows Metric to allocate equitably the damages for delay among those responsible for the delay.  In situations where more than one subcontractor causes delays, the subcontract allows Metric to allocate the damages for delay equitably between the subcontractors responsible for the delay.  The subcontract is silent, however, with regard to what happens if Metric's allocation was not done in good faith.

### D.   CALIFORNIA LAW DOES NOT REQUIRE ALLOCATION OF DELAY DAMAGES IN THIS CASE.

California law allows courts to apportion damages in those cases where delays are sequential.  The Court, however, is not convinced that it should apportion damages in this case.  Metric has not shown, by a preponderance of the evidence, that the delays are sequential.

1.    **The Court Conducted its Own Research Before it Entered its Findings
of Fact and Conclusions of Law.**

Metric complains that Belt Con had the opportunity to file its trial brief without Metric's
review and that Metric did not have an opportunity to respond to that brief.  See Motion to Alter or
Amend at 2.  Metric contends that Belt Con raised, for the first time in its trial brief, the issue of the
non-apportionment of liquidated damages.  See id.  The Court is not convinced that the issue of
apportionment was raised for the first time in Belt Con's trial brief.  Belt Con raised the issue, albeit
obliquely, in its memorandum supporting its motion for summary judgment.  Belt Con's supporting
memorandum stated that to sustain Metric's claim against Belt Con, Metric must prove that it suffered
damages, and that pursuant to Article 8 of the subcontract Metric must equitably allocate the damages
for the delays amongst those subcontractors responsible for them.  See Belt Con's Memorandum in
Support of Motion for Partial Summary Judgment ¶ 6, at 3, filed July 19, 2004 (Doc. 61).

Metric also contends that, under such circumstances, it had no opportunity to respond.  See
Motion to Alter or Amend at 2.  The Court disagrees. Belt Con filed its trial brief on November 15,
2004.  See Doc. 101.  The Court did not enter its Findings of Fact and Conclusions of Law until
December 30, 2004.  See Doc. 106.  Metric thus had a month and a half to seek leave to file a
response, but it did not do so.

Metric further contends that the Court incorrectly relied upon the cases that Belt Con cited.
Metric argues that, in citing the cases that it did, Belt Con misled the Court concerning apportionment
of delay under California law and failed to bring to the Court's attention cases dealing directly with
apportionment of delay in circumstances such as this case presents, where contracts have provisions
for extensions of time when another party causes delay.  See Motion to Alter or Amend at 2.  Metric

argues that, as a result of Belt Con's citation of old cases and the Court's reliance upon them, the Court erred in deciding this issue.  See id.

Metric contends that the Court erred when it refused to apportion the liquidated damages that the GSA assessed against Metric for delays that Belt Con caused.  Metric argues that the California courts have, in subsequent cases, modified the cases on which the Court relied and that the earlier cases therefore do not apply to his case.  Metric contends that the Court's conclusion was erroneous because California cases decided after the cases the Court cited strongly support the apportionment of liquidated damages in cases such as this case.

Contrary to what Metric's assertions may imply, however, the Court conducted its own research before entering its Findings of Fact and Conclusions of Law.  Belt Con did not cite in its Trial Brief or Supplemental Trial Brief the cases that the Court cited in its Conclusions of Law, and about which Metric complains.  As such, the Court does not believe Belt Con misled it.

## 2.  California Case Law.

Metric argues that the Court's conclusion was erroneous, because California cases decided after the cases the Court cites strongly support the apportionment of liquidated damages in this case. The issues before the Court are whether Belt Con delayed the project, resulting in the GSA assessing liquidated damages against Metric, and whether Belt Con's delays caused Metric to incur delay damages.

The Court does not disagree that it can apportion delay damages in the right case.  The Court does not believe, however, that this is the right case.  Metric is arguing that the Court must apportion delays between Metric and Belt Con, regardless of the evidence or lack thereof, because the GSA assessed liquidated damages and the damages that Metric is seeking from Belt Con are for the payment

of the liquidated damages that Metric incurred from the GSA.

The cases that Metric cites, however, do not change the law that the California Court of Appeals set forth in <u>Aetna Casualty & Surety Company</u> and <u>General Insurance Company of America</u>, and upon which the Court relied.  Neither <u>Nomellini Construction Company v. Department of Water Resources</u> nor <u>Jasper Construction, Inc. v. Foothill Junior College District of Santa Clara County</u>, the cases to which Metric points, involved concurrent delays.  The delays addressed in those cases could be separated in point of time during which one party or the other was wholly at fault.  In this case, the Court concluded that, because the delays were concurrent, any award of damages would be speculative.

Metric is correct that Belt Con did cite <u>Kelso v. Kirk Brothers Mechanical</u>.  While the parties have not cited any California cases that are directly on point, and the Court has not found any, <u>Kelso v. Kirk Brothers Mechanical</u> is the most appropriate case the Court has found pertaining to apportionment and concurrent delays.  In <u>Kelso v. Kirk Brothers Mechanical</u>, the Federal Circuit held that there was no period in which the government was the sole cause of delay so as to entitle the contractor to damages.  <u>See</u> 16 F.3d at 1176-77.   Like in <u>Kelso v. Kirk Brothers Mechanical</u>, the Court found that both the concrete work and the masonry work were on the critical path and concurrently delayed the project's completion, and that thus it was inappropriate to apportion damages.

The Court agrees that apportionment of delay damages is proper under California law in the proper case.  The Court does not dispute that it could apportion delay damages, including the liquidated damages that the GSA assessed.  Largely based upon <u>Kelso v. Kirk Brothers Mechanical</u>, however, the Court is still not convinced that it should apportion those damages.

**E.   BELT CON'S DELAYS WERE CONCURRENT, RATHER THAN SEQUENTIAL, WITH OTHER SUBCONTRACTORS' DELAYS.**

Apparently realizing its problem with California law on concurrent delay damages, Metric argues that, in this case, R&R's and Belt Con's delays were not concurrent.  Metric concedes that some delays were concurrent, but argues that there were no concurrent delays relevant to the masonry that took longer than five weeks to complete after Metric turned Building 19's entire second and third floors over to Belt Con.  See Metric's Reply at 3.  For the first time, however, in its Reply brief, Metric contends that Belt Con's delays were not concurrent with other delays to the dormitories project.  See id. at 2-3.  Specifically, Metric argues that the delays to the dormitories were, for the most part, sequential, not concurrent.  See id.

Metric takes a simplistic approach, contending that Belt Con, by taking longer than scheduled to complete its work, delayed completion of the dormitories.    See id. at 3-4.  Metric asserts that, once R&R completed its work allowing Belt Con to proceed, Belt Con had five weeks to perform its work.  See id.  Metric contends that, if Belt Con did not complete its work in the five weeks originally scheduled for doing so, Belt Con would be a subsequent cause of delay.  See id.  Characterizing the facts in this manner, Metric contends that the delays did not occur at the same time and concludes that the delays were sequential.  See id.

Metric's argument has not convinced the Court that Belt Con's delays were sequential.  Metric relies in large part on the testimony of its expert, which the Court did not find credible.  See Motion to Alter or Amend at 8-10.  The Court found Belt Con's expert credible and agrees with his testimony that the delays were concurrent.  Metric also relies on the project schedule to conclude that Belt Con's delays were sequential.  See id. at 8-11.  The evidence at trial, however, showed that the project went

off schedule early on and that the GSA did not accept any of Metric's nineteen updated schedules. See November 4 a.m. Transcript at 72:5-73:8 (Quick). Moreover, days are not fungible; when the GSA, Metric, and R&R delayed the project, Belt Con could not, at times, immediately bring its crews from El Paso, Texas and delays occurred simply because the project was so off schedule. See November 1 Transcript at 22:2-24:8 (Beltran). The Court cannot determine that Belt Con's delays were sequential when there was never a reliable project schedule in place. Instead, the Court agrees with Metric's initial delay analysis that the GSA directly or indirectly caused all of the delays.

## II.   THE COURT DID NOT ERR WHEN IT FOUND BELT CON WAS ENTITLED TO THE CONTRACT BALANCE EVEN THOUGH BELT CON DID NOT COMPLETE PERFORMANCE AND FAILED TO PROVIDE ROOF WARRANTIES.

Metric asks the Court to amend its decision to offset the contract balance for the roof warranties that Belt Con has refused to provide. See Motion to Alter or Amend at 14-16. Metric argues that the Court erred when it concluded that Metric's evidence of damages was speculative and conjectural. See id. Because it is still liable to the GSA for any warranty issues that arise from the roof, Metric contends that it has suffered damages in the amount of $118,000.00 based on one cost estimate to purchase roof warranties. See id. Metric's argument does not persuade the Court. Metric derives the amount of $118,000.00 from a letter from Prime Contractors to Metric in which Prime Contractors offered to provide roof warranties for that amount. See Defendant's Trial Exhibit BK (unadmitted), Letter from Prime Contractors to Metric, dated October 12, 2004 ("Prime Contractors' estimate"). At trial, Miller examined Prime Contractors' estimate and testified that Prime Contractors provided the estimate. See November 4 a.m. Transcript at 124:15-126:10 (Miller). When Metric's counsel asked Miller whether the estimate was a reasonable value of the warranties that Belt Con had failed to provide, Miller stated: "Based on my discussions I'm not sure I would take this

-36-

contract for this amount.  I'd [want] more money."  November 4 a.m. Transcript at 126:4-7 (Miller).

Following this colloquy with Miller, Metric did not offer Prime Contractors' estimate into evidence.

The $118,000.00 cost estimate for roof warranties does not provide a reasonable basis for the

computation of Metric's damages.  Prime Contractors' estimate is hearsay.  Miller's testimony

regarding his discussions about the value of roof warranties is also hearsay.  While Belt Con did not

object to the hearsay quality of Miller's testimony, the Court does not have to give it any weight if the

Court does not find it reliable.  See Dugan v. EMS Helicopters, Inc., 915 F.2d 1428, 1430-31 (10th

Cir. 1990)(stating that making a determination based on the collective credibility and reliability of the

evidence falls squarely within the factfinder's role).  There was no testimony presented demonstrating

that Prime Contractors' $118,000.00 offer is a reliable indicator of the value of the roof warranties.

Nor was there any expert testimony about the value of any warranty.  There is no evidence that Prime

Contractors' bid was a serious offer and more than something manufactured for litigation.  The Court

notes that Prime Contractors' offer to provide roof warranties is dated October 12, 2004, which is less

than three weeks before the commencement of the trial.

Metric presented no evidence at trial demonstrating that it had suffered any damages relating

to the warranties.  Metric's president testified that the GSA has not called Metric to honor the

warranties and that Metric has not performed any warranty work.  See November 4 p.m. Transcript

at 33:8-15 (Miller).  There was evidence presented, however, that Belt Con had responded to repair

calls.  See November 1 Transcript at 112:6-22 (Beltran).

Metric suggests that it may suffer damages in the future, because it remains liable to the GSA

for any warranty issues that may arise from the roof.  See Motion to Alter or Amend at 16.  Metric

argues that failure to provide a warranty is a substantial and material breach of a contract entitling the

-37-

owner to more than the original price of the warranty.  See id. at 14.  Metric also argues that its inability to present a definite future harm does not mean that it currently lacks a legally compensable claim for damages.  See id.  Metric attempts to support its argument by citing cases from the Tennessee Court of Appeals, the Washington Court of Appeals, and the Pennsylvania Superior Court. Those cases are not binding on this Court.  See id. at 14-15.  Because Metric and Belt Con executed the contract in the State of California, California law governs the contract.  See Findings and Conclusions ¶ E, at 16.  Nor are those non-California cases persuasive on the facts of this case, because they do not address the issue presently before the Court, whether the Court erred when it concluded Metric's evidence of damages was speculative and conjectural.  California law requires that a party attempting to recover damages projected into the future must show, with reasonable certainty, that detriment from the breach of contract will accrue to it in the future.  See Cal. Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 62, 221 Cal. Rptr. 171, 205 (1985).  "Damages which are remote, contingent, or merely possible cannot serve as a legal basis for recovery."  Id.  Other than stating that it may suffer damages in the future because it remains liable to the GSA for any warranty issues that may arise from the roof, Metric presented no evidence showing, with reasonable certainty, that it would suffer damages in the future.  See Motion to Alter or Amend at 14-16.  More importantly, Metric presented no evidence that would form a reasonable basis for computing damages. Under California law, while the amount of damages need not be calculated with absolute certainty, an approximation is satisfactory, "some reasonable basis of computation of damages be used" is required. GHK v. Mayer Group Inc., 224 Cal. App. 3d at 873, 274 Cal. Rptr. at 179.

The Court concludes that Metric's evidence of damages in the amount of $118,000.00 is speculative and conjectural.  Because it also concludes that Metric failed to demonstrate that it

-38-

suffered any damages, the Court will not amend its Findings of Fact and Conclusions of Law to offset the contract  balance for the roof warranties that Belt Con did not provide.

**III.    PIPE IDENTIFICATION.**

Metric presented evidence that the subcontract required Belt Con to perform pipe identification, that Belt Con  refused to do so, and that Metric paid another subcontractor $2,900 to perform pipe identification.  See November 3 a.m. Transcript at 65:4-10 (Pehrson).  Metric contends that Belt Con was not entitled to the contract balance because Belt Con failed to perform pipe identification, and thus that Metric was entitled to withhold the cost for pipe identification from Belt Con's payment.  See Motion to Alter or Amend at 13-14.  The Court agrees.  Belt Con points to no evidence to refute Metric's contention.  Belt Con's entire response to Metric's motion regarding the pipe identification issue consists of one sentence, which states: "Pipe identification was a minor item that was performed by the mechanical subcontractor as it should have been since Belt Con could not have identified the piping."  Belt Con's Response to Motion to Alter or Amend at 5-6, filed January 21, 2005 (Doc. 113).

The Court will amend its Findings of Fact and Conclusions of Law to offset from the contract balance the pipe identification work that Belt Con did not perform.

**IV.    THE COURT WILL CORRECT THE SCRIVENER'S ERRORS IN THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

Metric states: "It appears that the Court also made scrivener [sic] errors in preparing the final judgment [sic]."  Motion to Alter or Amend at 16.  Belt Con does not address the scriveners errors in its Response.  See Belt Con's Response to Motion to Alter or Amend.  The Local Civil Rules for the District of New Mexico state:  "The failure of a party to file and serve a response in opposition to

a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  The Court has reviewed these items, which do not appear in the Final Judgment, but instead appear in the Court's Findings of Fact and Conclusions of Law, and believes that it is necessary to correct them.

In three of the paragraphs in the Court's Findings of Fact and Conclusions of Law, the Court used the name "Metric" where context clearly shows it should have used the name "Belt Con." Paragraph 52 states: "On March 28, 2002, after receiving no satisfaction from Metric or its bonding company, Metric filed its claim."  Findings and Conclusions at 12.  Paragraph 52 should read "after receiving no satisfaction from Metric . . . , Belt Con filed its claim."  Paragraph N states: "Metric has not proved by a preponderance of the evidence that it gave adequate notice pursuant to Article 19 for the alleged damages because of inefficiencies and out of sequence work in the amount [sic] $147,002."  Id. at 18.  Paragraph N should read "Belt Con has not proved . . . ."  Paragraph O states: "Metric has not proved by a preponderance of the evidence that it gave adequate notice pursuant to Article 19 for the alleged damages relating to equipment and support damages in the amount of $63,157.85."  Id. Paragraph O should read "Belt Con has not proved . . . ."

Paragraph 64 states: "The GSA withheld $66,000 in liquidated damages from Metric's contract."  The testimony and evidence at trial show that the GSA withheld $320,800.00.  See November 4 a.m. Transcript at 126:11-15 (Miller); Plaintiff's Trial Exhibits 2, 3.  Paragraph 64 should read "The GSA withheld $320,800.00 in liquidated damages from Metric's contract."

The Court will make these corrections.

**IT IS ORDERED** that the Defendant's Motion to Alter or Amend Judgment is granted in part and denied in part.  The Court will not amend or alter the Court's Findings of Fact and Conclusions

of Law except as follows:

The following findings of fact will be added:

"**10.    Pipe Identification**

Belt Con's subcontract required that Belt Con perform pipe identification.  <u>See</u> November 3 a.m. Transcript at 65:5-6 (Pehrson).  Belt Con refused to perform pipe identification.  <u>See id.</u> at 65:6-7.  Metric hired another subcontractor to identify and mark all of the piping for a cost of $2,900.  <u>See id.</u> at 65:4-10."

Paragraph X shall read: "The contract balance that Metric owes Belt Con is $132,256.00, but is offset by $6,000.00, which Metric is entitled to recover for clean up costs, and $2,900.00, which Metric is entitled to recover for pipe identification costs.  Metric thus owes $123,356.06 plus prejudgment interest on the contract balance for the period starting November 14, 2001 and ending the date of this order.  Belt Con is also entitled to recover attorney fees and costs."

Paragraph 52 shall read: "On March 28, 2002, after receiving no satisfaction from Metric or its bonding company, Belt Con filed its claim."

Paragraph N shall read: "Belt Con has not proved by a preponderance of the evidence that it gave adequate notice pursuant to Article 19 for the alleged damages because of inefficiencies and out of sequence work in the amount of $147,002.00"

Paragraph O shall read: "Belt Con has not proved by a preponderance of the evidence that it gave adequate notice pursuant to Article 19 for  the alleged damages relating to equipment and support damages in the amount of $63,157.85."

Paragraph 64 shall read: "The GSA withheld $320,800.00 in liquidated damages from Metric's contract."

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

William J. Derrick
Law Offices of William J. Derrick, P.C.
El Paso, Texas

     _Attorney for Plaintiff Belt Con Construction, Inc._

Steven D. Meacham
Dann & Meacham
Seattle, Washington

     _Attorney for the Defendants_