## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
for the use of BELT CON CONSTRUCTION,
INC.,

        Plaintiff,

vs.                                    No. CIV 02-1398 JB/LAM

METRIC CONSTRUCTION, INC.,
and SAFECO INSURANCE COMPANY OF
AMERICA

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Belt Con's Segregation of Attorneys Fees and Costs, filed May 3, 2007 (Doc. 146) ("Segregation"). The Court held a hearing on attorneys fees and costs on August 29, 2007. The primary issues are: (i) whether the terms of the Subcontract or California law should determine who is the prevailing party for purposes of attorney fees; and (ii) whether Plaintiff Belt Con Construction, Inc.'s segregation of fees and costs associated with its unsuccessful claims against Metric Construction, Inc. ("Metric") is reasonable or flawed. Because the Court continues to believe that it was correct to find that Belt Con is the prevailing party, and because Belt Con's method of segregation, with some modifications, is reasonable, the Court will award Belt Con $146,602.97 in attorneys fees and costs for successfully prosecuting its contract claim.

### FACTUAL BACKGROUND

Raymundo Beltran, Jr. is the president of Belt Con and is the person that executed the Subcontract for Belt Con. See Declaration of Steven D. Meacham (executed May 14, 2007) ¶ 2, at

1-2, filed May 16, 2007 (Doc. 153).  Article 21 "Attorney Fees" of the Subcontract states:

> In the event of court proceedings between Contractor and Subcontractor . . . .

> The prevailing party shall be determined as follows for the purposes of awarding attorneys fees in a Contractor, Subcontractor, or Subcontractor surety dispute.

> Utilizing the Plaintiff's complaint filed with the court and any modifications or amendments to said complaint, only if such modification or amendments increase the amount of judgment requested, the amount for which judgment is requested shall be considered the "Basic Complaint Amount".  Added to the Basic Complaint Amount will be any request for punitive, general, special, consequential, or incidental damages.  If any request for judgment is based upon an unspecified amount of damages, such amount to be proven at trial, then for purposes of this Article, each type of unspecified damages will be $1,000,000.00 or the amount that is proven at trial, the greater of the two in each case.  Unspecified damages for attorney's fees or pre-judgment interest will not be included for the purposes of this Article.

> The sum of all types of alleged damages will be "The Total Complaint Amount".  Upon receipt of a judgment or final decision of the court, the prevailing party for the purposes of this Article will be determined as follows: If Plaintiff is awarded 50% or more of the Total Complaint Amount, including any offset for judgment arising out of Defendant's counter claim, the Plaintiff will be the prevailing party.  Conversely, if Plaintiff is awarded less than 50% of the Total Complaint Amount, including any offset for judgment arising out of Defendant's counter claim, the Defendant will be the prevailing party.

Subcontract at 3.

## PROCEDURAL BACKGROUND

Belt Con filed its Complaint (Doc. 1) on November 5, 2002, seeking damages in the amount of $143,251.70 in contract balance, $241,334.97 for delay damages, and $46,429.28 for Metric's "withholding of payment, late payments, and by underbilling the United States . . . in violation of the Prompt Payment Act."  Complaint at 3, filed November 5, 2002 (Doc. 1) ("Complaint").  The total amount sought by Belt Con was $431,015.95, together with interest, attorney fees, and costs.  See id. at 4.  Metric and Safeco (collectively referred to as "Metric") refused to accept service and

were formally served with summons.  See Return of Service for Metric (executed on March 2, 2003), filed March 21, 2003 (Doc. 17); Return of Service executed for Safeco (executed on March 4, 2003), filed March 21, 2003 (Doc. 16).

Metric filed a motion to dismiss on March 19, 2003, challenging venue and asking the Court for an order dismissing the action on the grounds that Ventura County, California was the proper venue.  See Doc. 14.  On May 7, 2003, the Honorable James A. Parker, now-Senior United States District Judge, denied Metric's motion to dismiss.  See Memorandum Order and Opinion, filed May 7, 2003 (Doc. 25).  The Court then filed an Initial Scheduling Order on May 12, 2003.  See Doc. 26.

Metric filed a Motion to Modify Provisional Discovery Plan and Grant Leave to Defendants to Amend its Answer to Assert Counterclaim on December 4, 2003.  See Doc. 41.  The parties completed their briefing on January 8, 2004.  See Defendants' Reply Brief in Support of its Motion to Modify Provisional Discovery Plan and Grant Leave to Defendants to Amend its Answer to Assert Counterclaims, filed January 8, 2004 (Doc. 44).  The Court filed a Second Notice of Rescheduling Hearing on March 31, 2004, setting the hearing for April 8, 2004.  See Doc. 50.  The Court granted Metric's Motion to Amend its Answer to Assert Counterclaim on April 21, 2004.  See Doc. 52.

On December 16, 2003, Metric's counsel took Beltran's deposition.  The parties discussed Article 21 of the Subcontract in a portion of the deposition:

Q.    Okay.  But you executed the subcontract, correct?

A.    Yes, I did.

Q.    Okay.  And at the time you executed the contract, was it your understanding that if you did not receive an [sic] excess of half the basic complaint amount that Metric would be considered the prevailing party?

A.    Well, like I say, that – you know, this contract probably was written with the

laws of California.  I don't know whether that would prevail here.

Q.      Okay.  And I'm not asking you whether it prevails in the state of California
or the state of New Mexico.  I'm asking you at the time that you executed the
subcontract did you understand that if you filed a complaint against Metric
– say, for example $500,000.  If you did not receive at least $250,000 that
Metric would be considered the prevailing party?

Mr. Derrick:   I'll object that it calls for a legal conclusion.  Construction of the
contract.

Mr. Meacham: You can still answer the question.

Mr. Derrick:   You can answer.

A.      Yes.

Deposition of Raymundo Beltran, Jr. at 25:6-25 (taken Dec. 16, 2007), attached to Declaration of

Steven D. Meacham (executed May 14, 2007), filed May 16, 2007 (Doc. 153).

By April 8, 2004, Belt Con had already expended over $75,000.00 in attorney fees and costs

in prosecuting its affirmative claim of $431,015.95, of which $143,251.70 was related to the

undisputed contract balance.  See Metric's Opposition to Belt Con's Memorandum in Support of

Belt Con's Segregation of Attorneys Fees and Costs at 5, filed May 16, 2007 (Doc. 152).  The Court

held a hearing on April 8, 2004, and on April 21, 2004, issued its Order granting the Defendants

leave to amend to assert counterclaim and reopening the discovery period to allow ninety additional

days of discovery related to the Defendants' counterclaim.  See Order, filed Apr. 21, 2004 (Doc. 52).

Because of the late filing of the counterclaim, Belt Con made a second trip to California to take the

depositions of Metric's president and project manager a second time on the counterclaim issues.

See Memorandum in Support of Belt Con's Segregation of Attorney's Fees and Costs at 2, filed

May 3, 2007 (Doc. 147) ("Belt Con's Memorandum").

On July 19, 2004, Belt Con filed a Motion for Partial Summary Judgment on Metric's

counterclaim for liquidated damages, because Metric had not been damaged in that amount.  See Doc. 60.  On August 12, 2004, Metric filed a Motion for Partial Summary Judgment on Belt Con's claim for damages for delay.  See Doc. 66.   At a hearing on September 2, 2004, the Court denied both motions.  See Clerk's Minutes, filed September 20, 2007 (Doc. 88).

On September 8, 2004, Metric filed a Motion for Reconsideration of its Motion for Partial Summary Judgment.  See Doc. 85.  On October 29, 2004, Metric withdrew the Motion for Reconsideration.  See Letter from Steven D. Meacham to the Court (dated Oct. 28, 2004), filed Oct. 29, 2004 (Doc. 99).

The Court held a bench trial on November 1, 2, 3, and 4, 2004.  Both parties filed closing briefs and proposed Final Findings of Fact and Conclusions of Law.  The Court issued its Findings of Fact and Conclusions of Law ("Findings and Conclusions"), see Doc. 106, and Final Judgment, see Doc. 107, on December 30, 2005.

Metric filed its Motion to Alter or Amend Judgment on January 10, 2005, see Doc. 108, and Belt Con filed its Motion for Attorneys Fees on January 14, 2005, see Doc. 110.  Belt Con filed its original Motion for Attorney Fees with supporting affidavits and memorandum requesting that the Court award it attorneys fees and costs in the amount of $168,984.48.  See Use Plaintiff's Motion for Attorney Fees at 1, filed January 14, 2005 (Doc. 110).  After responding to Metric's Motion to Alter or Amend Judgment, Belt Con filed a Supplemental Motion for Attorneys Fees on March 4, 2006, asking the Court to include in the award the amount of $12,414.50 for the response to Metric's Motion to Alter or Amend Judgment, and asking for total attorneys fees and other related non-taxable expenses in the amount of $181,398.98.  Mr. Derrick's supporting affidavit attached all invoices supporting the additional amount.  See Use Plaintiff's Supplemental Motion for Attorneys Fees, filed Mar. 4, 2005 (Doc. 123).

Metric did not raise its current argument -- that Article 21 of its Subcontract determines the prevailing party in any litigation between Metric and a Subcontractor – in its Memorandum in Opposition to Plaintiff's Motion for Attorneys Fees, filed January 31, 2005 (Doc. 114). The Court held a hearing on the motions on November 1, 2005. See Clerk's Minutes, filed December 14, 2005 (Doc. 139). The Court issued its Memorandum Opinion and Order on March 1, 2007 granting Metric's motion to alter or amend judgment in part and denying the motion in part. See Doc. 140.

In its ruling on Metric's motion to alter or amend judgment, the Court determined that Belt Con was owed $123,356.06 on the contract balance. See Memorandum Opinion and Order at 41, filed March 1, 2007 (Doc. 140). The Court denied Belt Con's delay and Prompt Payment Act claims. See Findings and Conclusions ¶ 55, at 13 and ¶¶ J-O, at 17-18. Thus, the Court awarded $123,356.06 of the $431,015.95 that Belt Con sought in damages. See Memorandum Opinion and Order at 41, filed March 1, 2007 (Doc. 140); Complaint at 4, filed November 5, 2002 (Doc. 1). This award represents 28.6% of Belt Con's claimed amount. See id.

The Court also concluded that Belt Con breached the contract by failing to provide the roof warranties. See Findings and Conclusions ¶ R, at 18-19. The Court ultimately concluded that, even though Belt Con had breached the Subcontract by failing to provide the roof warranties, Metric had failed to prove the value of the warranties and did not offset any additional amounts from the contract balance for Belt Con's breach. See Memorandum Opinion and Order at 36-39, filed Mar. 1, 2007 (Doc. 140).

On March 31, 2007, the Court issued its Memorandum Opinion and Order on Belt Con's Motion and Supplemental Motion for Attorneys Fees ("Attorneys Fees Memorandum Opinion and Order"). See Doc. 141. The Court found that Belt Con was the prevailing party under California Civil Code, § 1717(b)(1). See Attorneys Fees Memorandum Opinion and Order at 11-13. The

Court granted Belt Con's request for fees and costs relating to recovery of the contract balance and defending against Metric's counterclaim, but denied the request for fees and costs associated with its pursuit of delay damages. See id. at 14-17.

The Court also ruled that Belt Con must segregate the attorneys fees and costs related to the contract balance and its defense of Metric's counterclaim, from those attorneys fees and costs associated solely with seeking its delay damages. See Attorneys Fees Memorandum Opinion and Order at 17. After review of all of the invoices submitted with Belt Con's Motion for Attorneys Fees and Supplemental Motion for Attorney fees and costs of William J. Derrick, Francis S. Ainsa, Jr., and Travis R. Collier related to representing Belt Con in this action, Mr. Derrick, the lead counsel for Belt Con has, as ordered by the Court, segregated the attorney fees and expenses. See Affidavit of William J. Derrick (executed April 27, 2007) ¶ 4, at 1, filed May 3, 2007 (Doc. 148)("Mr. Derrick's Affidavit"). The result of Belt Con's segregation is: (i) attorneys fees and costs related to seeking the contract balance and defending against Metric's counterclaim are $152,267.44; and (ii) attorneys fees and costs associated solely with Belt Con's prosecution of its claim for delay damages are $29,131.54. See Segregation at ¶ 2, at 1-2. After reviewing Metric's response to Belt Con's segregation, Belt Con reduced its attorney fees claim from $152,267.44 to $149,642.44. See Transcript of Hearing (taken August 29, 2007) ("Tr.") at 4:11-25 (Derrick).[1]

Belt Con supported the Segregation with Mr. Derrick's affidavit, attaching those invoices on which fees and costs were segregated. Paragraph 4 of Mr. Derrick's affidavit reads in part:

> I have thoroughly reviewed all of the invoices submitted in support of Belt Con's Motion for Attorneys Fees and Supplemental Motion for Attorney Fees. Invoices on which I have segregated fees and costs relating solely to Belt Con's claim for

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

delay are attached hereto as Exhibit "A".  Entries marked with a checkmark are deleted in whole or in part.  If no figure appears next to the checkmark, I apportioned the entire entry to the delay claim.  Where an hourly figure appears next to the checkmark, I reduced the time charged to the hourly figure next to the checkmark meaning that the difference in the hours originally charged and the revised hours was apportioned to Belt Con's delay claim.

Mr. Derrick's Affidavit ¶ 4, at 1.  After the segregation, Belt Con's claim stood at $152,267.44 in fees and costs related to seeking the contract balance and defending against Metric's counterclaim. See Segregation at 1-2.

Metric opposes Belt Con's Segregation of Attorneys Fees and Costs for two primary reasons: (i) under the clear and unambiguous terms of the Subcontract, Metric is the prevailing party to this litigation; and (ii) Belt Con's segregation of fees and costs is flawed and Belt Con understates the attorney fees and costs associated with unsuccessful claims against Metric.  See Metric's Opposition to Belt Con's Memorandum in Support of Belt Con's Segregation of Attorneys Fees and Costs, filed May 16, 2007 (Doc. 152) ("Metric's Opposition").   Metric has reviewed the invoices that Belt Con submitted for attorney fees and costs, and has circled those hours and costs that Metric contends should be appropriately deducted from Belt Con's request for attorney fees and costs.  See id. at 6. Although Metric contends that it, not Belt Con, is the prevailing party as set forth under Article 21 of the Subcontract, Metric has determined that $75,240.42 in attorney fees and costs are related to Belt Con's unsuccessful pursuit of its delay and Prompt Payment Act.  See id.  Metric contends that, based upon the $135,774.22 of attorney fees and costs submitted and supported by invoices, less the $75,240.42 in attorney fees and costs for its pursuit of the rejected claims, the total amount of fees and costs supported by Belt Con for prosecution of its contract balance claim and the defense of Metric's counterclaim is $60,533.80.  See id.

The Court held a hearing on August 29, 2007, on Belt Con's segregation of its attorney fees.

-8-

During his opening remarks, Mr. Derrick stated that Belt Con made some adjustments to its attorney fees claim based upon the response that Metric filed.  See Tr. at 4:11-25 (Derrick).  Mr. Derrick removed an erroneous entry for two and a half hours on October 15, 2003, which should have been charged to a different file.  See id.  Mr. Derrick deducted ten and a half hours of charges on February 12, 13 and 16, 2004,  because they related to the notice issue on which Belt Con did not prevail.  See id.  Mr. Derrick also deducted two hours for a charge on August 31, 2004, related to the prompt payment issue on which Belt Con did not prevail.  See id.  Belt Con's revised claim is $149,642.44. See id.

During the August 29, 2007 hearing, the Court asked Mr. Derrick if some of the attorney fees, such as those for drafting the complaint and preparation for trial, should be reduced because that work was devoted to both successful and unsuccessful claims.  See  Tr. at 5:8-7:7 (Court & Derrick).  Mr. Derrick agreed.  See id.  When the Court asked Mr. Derrick how much such categories should be reduced, Mr. Derrick estimated that "based upon . . . the overall picture of things . . . maybe 25 to 30 percent [of charges for complaint and trial preparation] may be allocable to – solely to the delay claim, would be my guess."  Id. at 7:4-7 (Derrick).  The Court stated there were a few entries on preparing the complaint that might need to be reduced and asked Mr. Derrick if he had any thoughts on those.  See id. at 7:21-8:2 (Court).  Mr. Derrick stated "I wouldn't have any argument with that, Judge."  Id. at 8:3-4.  Later in the hearing, the Court again indicated it would reduce the charges for complaint and trial preparation by some percentage for the time devoted to the unsuccessful claims, and Mr. Derrick again agreed with the Court's proposed procedure.  See id. at 17:9-18:3 (Court & Derrick).

The Court asked Mr. Meacham for his thoughts on the segregation of attorney fees, specifically whether he had any further case law on California law regarding attorney fees, and

whether the Court can enforce the Subcontract attorney fee provision while still giving effect to the California attorney fee statute.  See Tr. at 8:9-9:2 (Court & Meacham).  Mr. Meacham indicated there was no case law beyond what he cited in his brief.  See id. at 8:14-20 (Meacham).  Mr. Meacham also stated that, based on his review, California law "gives the Court discretion" and "does not preclude the Court from enforcing  the terms of the subcontract in regards to attorney's fees."  Id. at 9:3-11 (Meacham).

## STANDARDS FOR ASSESSING ATTORNEYS FEES

"As a general rule, trial courts are without authority to award attorney's fees unless the right exists by contract or statute."  Paramount Pictures Corp. v. Thompson Theatres, Inc., 621 F.2d 1088, 1091 (10th Cir. 1980).  California law defines which party is the prevailing party in a contract action and provides that reasonable attorney's fees shall be determined by the court.  California Civil Code § 1717(a) states:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

> Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

> Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

> Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section.

> Any provision in any such contract which provides for a waiver of attorney's

-10-

fees is void.

Cal. Civ. Stat. § 1717(a).

California Civil Code § 1717(b)(1) provides:

> The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

Cal. Civ. Stat. § 1717(b). Under California law, "[i]t is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court." PLCM Group, Inc. v. Drexler, 22 Cal.4th 1084, 1095-96, 997 P.2d 511, 518-519 (2000) (stating that"[t]he experienced trial judge is the best judge of the value of professional services rendered in his court"). "Equitable considerations under Civil Code section 1717 must prevail over . . . the technical rules of contractual construction." PLCM Group, Inc. v. Drexler, 22 Cal.4th at 1095-96, 997 P.2d at 518-19.

There is a two-step process for determining a reasonable fee under Cal. Civil Code § 1717. First, the trial court calculates the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. PLCM Group, Inc. v. Drexler, 22 Cal.4th at 1095-96, 997 P.2d at 518-519. The trial court then "shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure." PLCM Group, Inc. v. Drexler, 22 Cal.4th at 1095-96, 997 P.2d at 518-519 (internal quotations omitted). The lodestar figure may be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal service provided. See id. "The trial court makes its determination after considering a number

-11-

of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." Id.

## ANALYSIS

The Court continues to believe that it correctly found that Belt Con was the prevailing party under California Civil Code § 1717(b)(1). It is unquestionable that Belt Con devoted a significant amount of trial preparation time and trial time to Belt Con's unsuccessful claims for delay, Prompt Payment Act, and defending against Metric's successful contract balance offsets. Nevertheless, Metric's attempt to segregate Belt Con's attorneys fees is arbitrary, and Belt Con's method of segregation produces a more reasonable result.

## I.   THE COURT CORRECTLY FOUND THAT BELT CON WAS THE PREVAILING PARTY.

For the first time, Metric argues that Article 21 of the Subcontract determines the prevailing party in any litigation between Metric and a Subcontractor, and asks the Court to enforce Article 21 of the Subcontract despite § 1717(b)(1). See Metric's Opposition at 1-4. Metric cites no legal authority – other than the Subcontract's language -- to support its position. See id.

The Court agrees with Metric that Article 21 of the Subcontract is clear and unambiguous. In the event Belt Con recovered at least fifty percent of its claimed amount, it would be the prevailing party. See Subcontract at 3. Belt Con prevailed on less than thirty percent of the "Total Complaint Amount." Memorandum Opinion and Order at 41, filed March 1, 2007 (Doc. 140). The Court does not disagree that, under the clear and unambiguous terms of the Subcontract, Metric, not Belt Con, is the prevailing party. See Subcontract at 3 ("If Plaintiff is awarded less than 50% of the Total Complaint Amount . . . the Defendant will be the prevailing party."). The Court disagrees with

-12-

Metric's belated contention, however, that the Court should disregard California statutory law and use Article 21 in determining the prevailing party.

Metric also argues that Belt Con understood that the Court would use Article 21 to determine the prevailing party.  See  Metric's Opposition at 2-4.  It may be true that, at the time that Belt Con executed the contract, it thought that, if it filed a complaint and did not receive fifty percent of the complaint, Metric would be the prevailing party.  See Declaration of Steven D. Meacham (executed May 14, 2007) ¶ 2, at 1-2, filed May 16, 2007, Doc. 153 (quoting Deposition of Raymundo Beltran, Jr. (taken Dec. 16, 2007) at 25:6-25).  But even Beltran's deposition suggests that he believed state law may impose other restrictions. See id.  And there is no evidence what the intent of Metric was, except for the contract language.

Finally, Metric contends that the contract clause is equitable.  See Metric's Opposition at 3. There are two problems with this argument.  First, if state law overrides the contract language, the Court is not free to substitute its or the parties' view of what is equitable for that of the California legislature.  See Cal. Civ. Stat. § 1717.  Second, it is not clear that the Subcontract's solution is more equitable than what California law provides.  It is not at all clear that a general contractor should refuse to pay an undisputed contract balance for this many years, and then avoid fees and costs because the subcontractor unsuccessfully sued for twice the undisputed contract balance. See PLCM Group, Inc. v. Drexler, 22 Cal.4th at 1095-96, 997 P.2d at 518-519 ("Equitable considerations under Civil Code section 1717 must prevail over . . . the technical rules of contractual construction.").

Section 1717(a) specifically addresses this situation by stating that any provision in a contract that provides for a waiver of attorney's fees is void.  See Cal. Civ. Stat. § 1717(a).  Article 21 defines "prevailing party" differently than does Section 1717(b)(2).  See Metric's Opposition at

2.    Consequently, Article 21 denies attorney fees to a plaintiff that recovers less than 50% of the Total Complaint Amount regardless of whether the defendant recovers any relief in an action on the contract.  See id.  Article 21 is a limited waiver of attorney fees and, therefore, is void.  Belt Con, not Metric, is entitled to recover attorney fees.

## II.    METRIC MISCHARACTERIZES BELT CON'S MOTION AND SUPPLEMENTAL MOTION.

Metric represents that it has totaled the invoices that Belt Con furnished in its request for attorney fees.   See  Metric's Opposition at 5.  Metric contends that the invoices that Belt Con furnishes in its Segregation do not total $181,125.98, but that the invoices total only $135,774.22. See id.  Metric further says: "Belt Con has failed to provide the supporting invoices for the attorneys fees that it claims making it impossible for Metric to prepare a rebuttal or response to the claim for those attorney fees unsupported by an invoice."  Id.

Belt Con represents that it has furnished Metric every invoice supporting the total claim of $181,125.98 with Belt Con's Motion and Supplemental Motion.  See Belt Con's Reply to Metric's Opposition to Belt Con's Segregation of Attorneys Fees and Costs at 3-4, filed May 25, 2007 (Doc. 154).  The invoices attached to the affidavit in support of the Segregation are only those invoices on which adjustments were made.  See id.

In spite of the language in Mr. Derrick's affidavit, Metric argues that Belt Con's total demand for attorneys fees is only $135,774.22.  See Metric's Opposition at 5.  The result of Metric's attempted allocation is that Belt Con would be entitled to only $60,533.80 out of $181,398.98 expended for the entire case over four and a half years.  See  Metric's Opposition at 6.

Metric apparently has not reviewed all of Belt Con's invoices, but nonetheless contends that Belt Con's Segregation in flawed.  Because Metric's segregation does not take into account all the

-14-

invoices, the Court cannot fairly give it much weight.  <u>See</u> Metric's Opposition at 5.  The Court must thus reject much of Metric's methodology and totals.

## III.   THE METHOD THAT BELT CON USED TO SEGREGATE FEES IS <u>REASONABLE.</u>

Much of Metric's response is an attempt to convince the Court not to grant Belt Con any fees.  But the Court has already decided that issue, and Metric has not expressly moved the Court to reconsider its prior opinion.  Accordingly, the issue is whether the Segregation that Belt Con has submitted properly deducts the fees for its unsuccessful claims.

### A.   THE COURT HAS ALREADY DECIDED THAT BELT CON IS ENTITLED TO ATTORNEYS FEES.

Belt Con prevailed on eighty-six percent of its contract balance claim.  Metric counters that the contract balance amount was not disputed.  <u>See</u> Metric's Opposition at 4.  The problem is that Metric still has not paid any amount.  <u>See</u> Findings and Conclusions ¶¶ 6-7, at 2.  Moreover, the Court has already decided that Belt Con is the prevailing party.  <u>See</u> <u>id.</u> ¶ W, at 21.  Unless Metric is trying to convince the Court to reconsider its prior opinion, this argument has little relevance to the present issue.

### B.   BELT CON'S METHODOLOGY IS REASONABLE.

Belt Con asserted an unsuccessful delay claim in the amount of $241,334.97 and unsuccessful Prompt Payment Act claim in the amount of $46,429.28.  <u>See</u> Complaint at 3.  Metric disputes Belt Con's segregation of fees and costs on the basis that the calculation is flawed.  Metric argues that Belt Con's Segregation understates Belt Con's attorney fees and costs associated with the unsuccessful claims it asserted against Metric.  <u>See</u> Metric's Opposition at 4-6.

1.      **The Court will not Deduct Fees for Litigation Regarding Offsets, Deductive Change Orders, the Pipe Identification, and the Roof Warranty Breach.**

Metric points out that the Court concluded that Metric had legitimate offsets against the contract balance and awarded Belt Con $123,356.06 of the $143,251.70 contract balance that Belt Con claimed.  See Metric's Opposition at 4.  Metric argues that, in segregating the attorney fees and costs, Belt Con did not deduct amounts relating to its unsuccessful defense against Metric claims for contract balance offsets relating to Metric's back charges, the deductive change orders, the pipe identification, and the roof warranty breach.  See id. at 5.  The Court has already ruled on these claims, stating: "The Court will not require Belt Con to segregate the fee between Belt Con's contract claims and its defense of Metric's counterclaim" because these claims were "incidental to the delay issue [and] [n]o apportionment is therefore necessary."  Memorandum Opinion and Order at 15, filed March 31, 2007 (Doc. 141).

2.      **Belt Con's Methodology is, Overall, Reasonable.**

Belt Con's counsel has satisfied the requirement for keeping meticulous time records.  He has also submitted a logical and reasonable segregation of the fees and costs related solely to Belt Con's claim for delay damages in those instances where it is possible to make such segregation.  While some adjustments are needed and appropriate, it is a good base, and more reasonable than Metric's approach.

B.      **BELT CON'S BREAKDOWN BY PHASES IS A REASONABLE APPROACH.**

Belt Con broke its attorney fees and costs down into three phases.  See Memorandum in Support of Belt Con's Segregation of Attorney's Fees and Costs at 3, filed May 3, 2007 (Doc. 147). Phase 1 addresses jurisdictional issues.  See id.  Phase 2 addresses substantive litigation issues, and Phase 3 addresses Belt Con's response to Metric's motion to alter or amend judgment. See id.

According to Belt Con, the total for the three phases of work is $181,398.98 before segregation.  <u>See</u> Mr. Derrick's Affidavit at Exhibit C.

Metric has segregated much of Belt Con's work by circling "the hours and costs that should be appropriately deducted from Belt Con's request for attorney fees and costs."  Metric's Opposition, Exhibit 2.  Metric indicates that over 300 charges should be deducted from Belt Con's invoices.  <u>See</u> Metric's Opposition, Exhibit 3.  Metric provides very little discussion why it believes those charges should be deducted; only about ten of the circled charges have an explanatory handwritten note justifying the deduction.   <u>See</u> Metric's Opposition, Exhibit 2.

## 1. <u>Belt Con Should Recover its Segregated Fees and Costs for First Phase</u>.

The history of this case breaks down into three distinct phases.  The first phase is from the filing of the Complaint to the Court's ruling on Metric's Motion to Dismiss, approximately six months after Belt Con filed its Complaint.  <u>See</u> Memorandum in Support of Belt Con's Segregation of Attorney's Fees and Costs at 3, filed May 3, 2007 (Doc. 147).  Belt Con's attorney fees and costs for that phase were $21,126.47.  <u>See</u> Mr. Derrick's Affidavit at Exhibit C.  Metric's segregation would not allow Belt Con many fees and costs for the initial phase of the case involving Metric's challenge to venue and jurisdiction in its Motion to Dismiss.  <u>See</u> Opposition at Exhibit 2.

It is not possible to segregate most of the fees and costs relating to different claims during that phase of the case, because it involved issues of jurisdiction and venue going to all issues in the case. Metric's motion contesting jurisdiction and venue necessitated the attorney fees and costs incurred in phase 1.  Belt Con deducted some fees and expenses from the first phase in the amount of $7,695.00 for "some research on no damage for delay clause and things like that."Tr. at 7:14-18 (Derrick).  Metric provides no argument for segregating the first phase fees and costs.  There is no sound reason for the Court not to allow most of the fees and costs incurred in the first phase,

excluding the $7,695.00 that Belt Con deducted.

At the August 29, 2007, hearing, the Court suggested, and Mr. Derrick agreed, that it should reduce charges for complaint preparation for time devoted to the unsuccessful claims.  See Tr. at 5:8-8:4 (Court & Derrick).  Mr. Derrick estimated that those charges should be reduced by twenty-five to thirty percent.  See id. at 7:4-7 (Derrick).  Because Mr. Derrick's block billing makes precise segregation difficult, and because Belt Con bears the burden of proof on its fees, the Court will reduce the following charges by thirty percent:

| DATE | DESCRIPTION | HOURS | LAWYER |
|------|-------------|-------|--------|
| Oct-18-02 | Work on Complaint. | 2.00 | WDER |
| Oct-21-02 | Long distance call to Lynn Farley regarding Rainbow Painting claim and draft of complaint; work on complaint; letter to Juan Beltran regarding information for draft complaint. | 2.00 | WDER |
| Oct-22-02 | Receive draft complaint with information from Juan Beltran; complete complaint. | 0.60 | WDER |
| Oct-28-02 | Meet with Frank Ainsa to go over complaint; conference with paralegal regarding filing and service of complaint. | 1.00 | WDER |
| | Telephone call to Juan Beltran regarding information for complaint; prepare final version of complaint. | 1.00 | WDER |
| Oct-29-02 | Trip to Frank Ainsa's office for signing complaint and cover sheet; conference with Frank regarding same. | 1.00 | WDER |

Metric's Opposition at Exhibit 2.  Mr. Derrick's billing rate for the 7.6 hours quoted above is $175.00 per hour resulting in a total of $1,330.00.  See id.  The Court will reduce Mr. Derrick's fees

for preparation of the complaint by thirty percent, which amounts to a reduction of $399.00.

        **2.**      **Belt Con Should Recover its Segregated Fees and Costs for the Second Phase.**

The second phase is that period of time between the Court's denial of Metric's Motion to Dismiss on May 7, 2003, and the Court's Final Judgment on December 30, 2005. See Memorandum in Support of Belt Con's Segregation of Attorney's Fees and Costs at 3, filed May 3, 2007 (Doc. 147). The bulk of the work was done during this phase. See id. The parties conducted written discovery and depositions, and filed several pretrial motions including motions for summary judgement. See id. The trial was held on November 1, 2, 3, and 4, 2004. Belt Con has attempted to segregate its attorneys fees and costs during this second phase as the Court directed.

For the second phase of the litigation, Metric has deleted all of Belt Con's work on disclosures and requests for production relating to the entire case. See Metric's Opposition, Exhibit 2. It also deleted the time spent in preparing for and taking depositions of Metric's witnesses in early December 2003 apparently on the theory that these depositions were taken before Metric filed its counterclaim. See id. at 25-28. During this time, however, Metric denied that it owed Belt Con the contract balance, arguing that it was more than offset by claims it intended to assert against Belt Con for delays it alleged that Belt Con caused. See Belt Con's Reply to Metric's Opposition at 5, filed May 25, 2007 (Doc. 154). Metric did not furnish its expert's report until after these depositions were taken, and the Court did not grant Metric leave to file its Counterclaim until April 2004, which required that Belt Con re-depose Metric's witnesses in June 2004. See id. There does not appear to be a sound reason to make deductions for these items. The Court agrees with Belt Con's decision not to deduct these activities.

Metric also eliminated much of the time spent with Belt Con's expert, Lyn Farley. See

Metric's Opposition, Exhibit 2 at 8, 12, 14-15,17-22, 25-28, 32, 34, 37-39, 41-43, 51-52, 56-59, 62. While some of Farley's work was related to Belt Con's unsuccessful delay claim, a significant portion of his work was for the purpose of defending against Metric's counterclaim.  See Belt Con's Reply to Metric's Opposition at 5, filed May 25, 2007 (Doc. 154).  Moreover, Belt Con segregated, either in full or in part, many of the charges related to Farley's work.  See Metric's Opposition, Exhibit 2.  The Court agrees with Belt Con's methodology and decisions on Farley's work.

Metric argues that Belt Con, in its Segregation, is requesting reimbursement for attorney hours related to its motion whether the Court should apply California law or New Mexico law, an issue related to Belt Con's claims for delay damages and unrelated to the contract balance claims. See Metric's Opposition at 5.  The Court disagrees.  The issue of California law has pervaded this entire case, including this motion.  See Findings and Conclusions ¶¶ C-E at 15-16, G-H at 16, S at 19, U-V at 19-21.  The choice-of-law issue is not limited to delay damages.  See id.  Moreover, Belt Con segregated charges for "Legal research regarding no damage for delay clause and New Mexico or California law controlling" and "Research California statute on no damage for delay clause." Metric's Opposition, Exhibit 2 at 11.  The Court will adopt Belt Con's methodology for the Second Phase.

### 3.      The Court will Reduce Belt Con's Request for the Third Phase.

The third phase is that from the Final Judgment on December 30, 2005, to the present, which has involved Metric's Motion to Alter or Amend Judgment and Belt Con's Motion for Attorneys fees, and go to the entire case.  Belt Con did not contest the Court's ruling that it was not entitled to recover its delay damages.  Belt Con's fees and costs for this phase were $12,414.50.  See Mr. Derrick's Affidavit, Exhibit C.

Belt Con did not segregate any fees and costs for the third phase because "Belt Con did not

contest the court's ruling that it was not entitled to recover its delay damages and [Belt Con's attorney] could find no rational basis to segregate the time spent on the Motion and Supplemental Motion for Attorneys Fees."  Mr. Derrick's Affidavit ¶ 7, at 2.  Metric presents no argument regarding the appropriate segregation of the third phase other than noting that Belt Con failed to provide the invoices for the third phase, thereby making it impossible for Metric to respond.  See Metric's Opposition at 5.  While it did not provide invoices for the third phase with its Segregation, Belt Con provided Metric with all of its invoices with Belt Con's Motion and Supplemental Motion for Attorneys Fees.  See Belt Con's Reply to Metric's Opposition at 3-4, filed May 25, 2007 (Doc. 154).  Metric has not gone through these invoices and disputed individual entries.  See Metric's Opposition at 5.  The Court is not obligated to comb the record to make a party's arguments for it. See Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000).  Doing so would not only consume an inordinate amount of time, but would result in the Court abandoning its neutrality and becoming an advocate in the adversarial process.  See id.

Some of Belt Con's work for the third phase relates to Metric's Motion to Amend or Alter the Final Judgment.  The purpose of rule 59(e) of the Federal Rules of Civil Procedure, Motion to Alter or Amend, is "to clarify that the district court has the power to rectify its own mistakes in the period immediately following the entry of judgment."  12 J. Moore, Moore's Federal Practice § 59.30, at 59-98 - 59-99 (3d ed. 2007).  While Metric's Motion to Amend or Alter Judgment required reconsideration of some of the evidence relevant to Belt Con's delay claim, the primary issues were apportionment of delay that Metric alleged Belt Con caused, roof warranties, and pipe identification work.  See Memorandum Opinion and Order at 1, filed March 1, 2007 (Doc. 140). Belt Con's work on Metric's Motion to Amend or Alter the Final Judgment was, therefore, not associated solely with Belt Con's prosecution of its delay claim against Metric.  Indeed, Belt Con

did not contest the Court's ruling on its delay claim against Metric.

At the August 29, 2007, hearing, the Court suggested, and Mr. Derrick agreed, that it should reduce charges for trial and exhibit preparation for time devoted to the unsuccessful claims.  See Tr. at 5:8-8:4 (Court & Derrick).  Mr. Derrick estimated that those charges should be reduced by twenty-five to thirty percent.    See id. at 7:4-7 (Derrick).  Because Mr. Derrick engaged in block billing, because it is difficult for the Court to reduce the block charges precisely, and because Belt Con bears the burden of proof on its fees, the Court will reduce the following charges by thirty percent:

| DATE | DESCRIPTION | HOURS | LAWYER |
|---|---|---|---|
| Oct-06-04 | Telephone call to Juan Beltran regarding exhibits and trial preparation; letter from Steve Meacham regarding exhibits; conference with legal assistant regarding exhibits and photos for Meacham; long distance call from Meacham regarding hearing on Motion for Reconsideration; long distance call to Meacham regarding same. | 1.70 | WDER |
| Oct-12-04 | Conference with legal assistant regarding assembling exhibits for trial. | 0.50 | WDER |
| Oct-15-04 | Receive and review Metric's exhibits. | 1.00 | WDER |
| Oct-18-04 | Review Quick power point presentation; long distance call to Lyn Farley regarding same; telephone call to Raymundo regarding meeting next week; review Metric exhibits. | 2.00 | WDER |
|  | Review Quick report and exhibits to compare to trial exhibit. | 0.50 | WDER |

| | | | |
|---|---|---|---|
| Oct-19-04 | Telephone call to Raymundo Beltran regarding meeting next week; long distance call to Lyn Farley regarding same; conference with legal assistant regarding exhibits. | 0.8 | WDER |
| | Long distance call to Lyn Farley regarding schedules; letter to Steve Meacham regarding missing exhibits and schedules. | 0.6 | WDER |
| | Review court Rules and Final Pretrial Order regarding introduction of exhibits; begin preparation of exhibit notebooks. | 1.00 | WDER |
| | Start preparing and organizing Plaintiff's Exhibits Notebooks. | 4.00 | RCAL |
| Oct-20-04 | Pull and review trial exhibits for photocopying. | 2.50 | BBAK |
| Oct-21-04 | Make six sets of exhibits at Kinkos. | 3.5 | BBAK |
| Oct-22-04 | Conference with legal assistant preparation of exhibit lists and computer equipment for courtroom; revise Stipulated Exhibit List and Contested Exhibit List; letter to Steve Meacham regarding same; long distance call to Lyn Farley regarding exhibits. | 1.50 | WDER |
| | Go through all exhibits and prepare for Raymundo's direct exam and trial; work on outline and Trial Notebook index; conference with legal assistant regarding filing and serving exhibit lists. | 3.70 | WDER |
| Oct-25-04 | Conference with legal assistant regarding exhibits; trial preparation, outline for Raymundo and outline for cross examination on PT building delay. | 3.50 | RCAL |
| | Continue assembling Exhibits | 2.80 | RCAL |

|  |  |  |  |
|---|---|---|---|
|  | Notebooks; phone call to Steve Meacham regarding their Exhibit Notebooks; trip to Kwik Kopy to photocopy the color photos and schedules contained in the power point presentation; return to office and photocopy black and white pages of power point presentation. |  |  |
| Oct-26-04 | Meet with Raymundo Beltran and Lyn Farley for trial preparation entire day. | 8.00 | WDER |
|  | Continue preparation of Exhibits Notebooks; photocopy deposition summaries; pull and organize all depositions, exhibits and summaries in red rope folder for trial; conference with Beth Baker regarding preparation for trial and visit to Las Cruces. | 6.50 | RCAL |
| Oct-27-04 | Work with Lyn Farley entire day for preparation of testimony. | 8.50 | WDER |
| Oct-28-04 | Photocopy discovery documents and assemble in Trial Notebook; photocopy additional exhibit documents and place in respective Exhibits Notebooks. | 3.50 | RCAL |
| Oct. 29-04 | Prepare for trial. | 5.00 | WDER |
|  | Trial preparation. | 2.50 | BBAK |
|  | Finish assembling Trial Notebooks and assemble revised power point presentation. | 2.30 | RCAL |
| Oct-30-04 | Prepare for trial. | 4.00 | WDER |
|  | Meet with Mr. Derrick to finalize trial notebooks and box up same. | 3.00 | RCAL |

Metric's Opposition at Exhibit 2.  Mr. Derrick's billing rate for the 38.8 hours quoted above is

$174.01 per hour, except for the 4.0 hours on Oct-30-04 when it is $175.00 per hour, resulting in a total of $6,755.55.  See id.  The billing rate for the two paralegals, BBAK and RCAL, for the 34.10 hours quoted above is $60.00 per hour, resulting in a total of $2,046.00.  The Court will reduce Mr. Derrick's and the paralegals' fees for exhibit and trial preparation by thirty percent, which amounts to a reduction of $2,640.47.

### C.     OVERALL, THE AWARD IS REASONABLE.

While the Court has carefully been through the invoices, before making a final award, the Court has stepped back to see if the award is overall reasonable.  Belt Con's segregation indicates that it expended $29,131.54 – sixteen percent of its total attorney fees and costs – in asserting the delay claim and the Prompt Payment Act claim, which amounted to almost seventy percent of its affirmative claims.  See Segregation at 2.  At the August 29, 2007, hearing, Belt Con reduced its claim for attorney fees by another $2,187.50 for charges related to the delay and Prompt Payment Act claims, thereby increasing its attorney fees and costs in asserting the delay and Prompt Payment Act claims from $29,131.54 to $31,319.04, which is seventeen percent of its total attorney fees and costs.  See Tr. at 4:11-25 (Derrick).  Metric contends that this segregation appears to be grossly understated.  The Court disagrees.

This case presented complex issues of law and fact ranging from jurisdiction and venue to the late filing of a counterclaim requiring a Motion for Leave to Amend, an extension of the discovery period to allow Belt Con discovery on the counterclaim issues that resulted in additional attorneys fees and costs, Motions for Summary Judgment filed by both Belt Con and by Metric, issues regarding whether California or New Mexico law applies, a four-day trial involving expert testimony on both sides, a large volume of documentary evidence, Metric filing  a Motion to Alter or Amend Judgment, Belt Con's Motion and Supplemental Motion for Attorneys Fees, issues

whether Belt Con was the prevailing party and entitled to attorneys fees under California law, and now the segregation of attorneys fees between claims and counterclaims.  See Findings and Conclusions; Defendants' Motion to Modify Provisional Discovery Plan and Grant Leave to Defendants to Amend its Answer to Assert Counterclaims, filed December 4, 2003 (Doc. 41); Belt Con's Motion for Partial Summary Judgment, filed July 19, 2004 (Doc. 60); Defendants Motion for Partial Summary Judgment, filed August 12, 2004 (Doc. 66); Trial Transcript (taken November 1-4, 2004); Metric's Motion to Amend or Alter Judgment, filed January 10, 2005 (Doc. 108); Belt Con's Motion for Attorneys Fees, filed January 14, 2005 (Doc. 110); Belt Con's Supplemental Motion for Attorneys Fees, filed March 4, 2005); Belt Con's Segregation of Attorneys Fees, filed May 3, 2007 (Doc. 146).

Metric's segregation of fees and costs is flawed, and overstates the attorney fees and costs associated with unsuccessful claims against Metric.  By omitting any fees and costs for the First and Third Phases, Metric's segregation would deny fees and costs to Belt Con in the amount of $33,541.35.  See Belt Con's Reply at 5.  Moreover, while asking the Court to allow Belt Con only $60,533.80 out of a total of $181,398.98, Metric admits that there is some arbitrariness to its allocation: "In reviewing numerous entries, it was difficult if not impossible to allocate the time or percentage of time spent on a successful claim versus an unsuccessful claim or a claim successfully defended versus a claim unsuccessfully defended."  Metric's Opposition at 5.  The Court will not follow Metric's attempted allocation.

Upon careful review of the invoices, the Court is convinced that Belt Con has, for the most part, reasonably segregated the fees and costs relating solely to Belt Con's claim for delay damages from the total to arrive at a figure that the Court should award as attorneys fees and costs.  The Court has reduced the amounts requested for Phases 1 and 3 by $399.00 and $2,640.47, respectively, for

the complaint and trial preparation devoted to the unsuccessful claims.  The Court believes the amount requested in the Segregation is reasonable and more accurately reflects the time and resources Belt Con spent on its successful claims and defenses in this case than Metric's proposed methodology.  The Court will, therefore, award attorneys fees and costs to Belt Con in the amount of $146,602.97.

**IT IS ORDERED** that the Plaintiff is awarded $146,602.97 in attorneys fees and costs as the prevailing party in this action.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Travis R. Collier
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

Charles McNabb
El Paso City Attorney's Office
El Paso, Texas

Francis S. Ainsa
Ainsa Hutson, L.L.P.
El Paso, Texas

– and –

William J. Derrick
Law Office of William J. Derrick, P.C.
El Paso, Texas

*Attorneys for Use Plaintiff Belt Con Construction, Inc.*

Barney James Reeves
Reeves and Reeves, P.A.
Las Cruces, New Mexico

– and –

Steven D. Meacham
Peel Brimley, L.L.P.
Seattle, Washington

*Attorneys for the Defendants*